MANNING CURTIS BRADSHAW
& BEDNAR PLLC
Mitch M. Longson, *Pro Hac Vice*
mlongson@mc2b.com
201 S. Main Street, Suite 750
Salt Lake City, Utah 84111
T. 801.303.0036
F. 801.364.5678

BARRIENTOS PC
J. Alejandro Barrientos, SBN 346676
Alejandro@bts.law
145 S. Fairfax Avenue, Suite 200-152
Los Angeles, CA 90036
T. 626.551.4564
F. 626.427.6753

Attorneys for Defendants Checkmate.com, Inc. and Vishal Agarwal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROBERT NESSLER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CHECKMATE.COM, INC., a Delaware Corporation; VISHAL AGARWAL; an individual; DOES 1-10; inclusive.<br><br>Defendant.<br><br>***Caption continued on next page*** | Case No. 2:26-cv-00767-MEMF-AS<br><br>DEFENDANT-COUNTER CLAIMANT CHECKMATE.COM, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE, OR ALTERNATIVELY, TO DISMISS; STATEMENT OF COMPLIANCE WITH LR 11-6.1 |

1

CHECKMATE.COM, INC.,

        Counterclaim-
        Plaintiff,

   v.

ROBERT NESSLER,

        Counterclaim-
        Defendant.

1

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................... 6

II.  CHECKMATE'S COUNTERCLAIMS WERE CORRECTLY FILED AS OF RIGHT UNDER RULE 15(1)(A) ................................................................... 6

III.  CHECKMATE HAS ADEQUATELY PLED ITS CLAIMS. ... 8

    A.  Breach of Contract ........................................................... 9

    A.  Breach of Implied Covenant of Good Faith and Fair Dealing ........................................................... 11

    B.  Fraud & Fraudulent Concealment .............................. 12

    C.  Negligent Misrepresentation ....................................... 17

    D.  Declaratory Relief ......................................................... 18

    E.  The Economic Loss Doctrine ....................................... 18

IV.  More Definite Statement Under Rule 12(e) .......................... 20

V.  CONCLUSION ................................................................... 21

**TABLE OF AUTHORITIES**

| Case | Page Nos. |
|------|-----------|
| Albert's Organics, Inc. v. Holzman, 445 F. Supp. 3d 463 (E.D. Cal. 2020) | 9, 10 |
| Ashcroft v. Iqbal, 556 U.S. 662 (2009) | 8, 17 |
| Bily v. Arthur Young & Co., 3 Cal. 4th 370 (1992) | 18 |
| Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336 (9th Cir. 1996) | 8 |
| Dhital v. Nissan N.A., Inc., 84 Cal. App. 5th 828 (2022) | 20 |
| Eclectic Properties East, LLC v. Marcus & Millichap Co., 751 F.3d 990 (9th Cir. 2014) | 8 |
| Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048 (9th Cir. 2003) | 8 |
| Erickson v. Pardus, 551 U.S. 89 (2007) | 8 |
| Fineberg v. Niekerk, 175 Cal. App. 3d 935 (1985) | 18 |
| Freeman v. Indochino Apparel, Inc., 443 F. Supp. 3d 1107 (N.D. Cal. 2020) | 10 |
| Greenwich Ins. Co. v. Rodgers, 729 F. Supp. 2d 1158 (C.D. Cal. 2010) | 8 |
| Guz v. Bechtel National, Inc., 24 Cal. 4th 317 (2000) | 11 |
| Hernandez v. Bank of America, N.A., No. 1:25-cv-00710-KES-HBK, 2026 WL 1346683 (E.D. Cal. May 14, 2026) | 20 |
| Hybrid Financial Ltd. v. Hammitt, Inc., No. CV 22-8635 DSF (MRWx), 2023 WL 3150092 (C.D. Cal. Mar. 6, 2023) | 8 |
| In re Bank of America California Unemployment Benefits Litigation, 674 F. Supp. 3d 884 (S.D. Cal. 2023) | 11 |
| Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992) | 6, 7 |
| Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) | 14 |
| Lazar v. Superior Court, 12 Cal. 4th 631 (1996) | 12 |

3

MST Management, LLC v. Chicago Doughnut Franchise Co., LLC, 584 F. Supp. 3d 923 (D. Nev. 2022) — 13

Moore v. Kayport Package Express, Inc., 885 F.2d 531 (9th Cir. 1989) — 14

OJ Commerce LLC v. Traffic Tech., Inc., No. CV 24-1407 PA (MAAx), 2024 WL 5694487 (C.D. Cal. Dec. 17, 2024) — 7

Rattagan v. Uber Technologies, Inc., 17 Cal. 5th 1 (2024) — 15, 16, 19

Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979 (2004) — 19

Sargon Enterprises, Inc. v. University of Southern California, 55 Cal. 4th 747 (2012) — 10

Semegen v. Weidner, 780 F.2d 727 (9th Cir. 1985) — 14

Stevens v. Superior Court, 180 Cal. App. 3d 605 (1986) — 16

Storek & Storek, Inc. v. Citicorp Real Estate, Inc., 100 Cal. App. 4th 44 (2002) — 11

Swartz v. KPMG LLP, 476 F.3d 756 (9th Cir. 2007) — 12

Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc., 753 F. Supp. 3d 966 (C.D. Cal. 2024) — 19, 20

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003) — 9

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff Robert Nessler ("Plaintiff" or "Nessler") co-founded VoiceBite, a customer-service based company that leveraged artificial intelligence ("AI") to automate the voice ordering process for restaurants. (Dkt. 28, Counterclaims ("Counterclaims" or "CC") at ¶ 12.) Defendant Checkmate.com, Inc. ("Checkmate" or "Defendant") is a technology company that offers a variety of technology and services to restaurants, helping them with first-party ordering, third-party integrations, menu management, loyalty programs, and more. (CC at ¶ 11.)

As alleged in Checkmate's Counterclaims, Checkmate was duped by Plaintiff into paying significant amounts of money for worthless assets when Plaintiff made numerous false representations about the proprietary code for VoiceBite's voice ordering AI application. Still trying to avoid accountability for his egregious conduct, Plaintiff filed a Motion to Strike Counterclaims, or Alternatively, to Dismiss (Dkt. 33). For the reasons described herein, it should be denied.

## II.  CHECKMATE'S COUNTERCLAIMS WERE CORRECTLY FILED AS OF RIGHT UNDER RULE 15(1)(A)

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a defendant "may amend its pleading once as a matter of course" if amendment is done within "21 days after serving it." The Ninth Circuit has stated that Rule 15 amendments should be applied liberally. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). Despite Rule 15's liberal application, Plaintiff attempts to impose additional procedural barriers on Checkmate's amendment that find no support in the plain text of Rule 15, in the Court's orders, or in the caselaw Plaintiff cites. Plaintiff's argument that Checkmate was not entitled to Rule 15's amendment provision is that in granting an extension for time to file an Answer, but denying an extension of time to file

counterclaims, the Court somehow superseded Rule 15 and barred Checkmate from exercising its right to amend within 21 days under Rule 15(a)(1).

Plaintiff's reliance on both *Novitzky v. TransUnion LLC*, and *Johnson v. Mammoth Recreations, Inc.* in support of this argument is misplaced. Although those cases support the conclusion that parties may not amend pleadings under Rule 15(a)(1) after a court has entered a scheduling order entered under Rule 16(b) with a deadline to amend pleadings, the circumstances here are distinct. Most obviously, the Court has not entered a Rule 16 scheduling order, which must be issued after the parties file their Rule 26(f) report or after a scheduling conference with the parties— neither of which had occurred at the time Checkmate filed its amended pleading. This Court's decision denying an extension of time to file counterclaims is not equivalent to a scheduling order with a deadline to amend pleadings. Absent such a scheduling order, and absent a specific deadline to amend pleadings that would somehow supersede Checkmate's right to amend within 21 days, amendments as a matter of course are permitted under Rule 15(a)(1)(A).

Plaintiff's reliance on *OJ Commerce LLC v. Traffic Tech.* is equally misplaced. In that case, the court held that "Rule 13(a)(1) does not allow a defendant to file an amended counterclaim outside of the times provided by Rule 15(a)(1) and in ***contravention of a deadline set pursuant to Rule 16(b)*** without obtaining the opposing party's consent or the court's leave." *OJ Commerce LLC v. Traffic Tech., Inc.*, Case No. CV 24-1407 PA (MAAx), 2024 WL 5694487, 2024 U.S. Dist. LEXIS 22916 (C.D. Cal. Dec. 17, 2024.) (emphasis added). *OJ Commerce LLC* thus stands only for the proposition that Rule 13(a)(1) does not allow a party to amend under Rule 15 after a court-imposed amendment deadline has passed. Again, those are not the circumstances here. The Court's order denying Checkmate's ex-parte application made no reference to amendment, deadlines to amend, or otherwise purported to

override application of the Federal Rules of Civil Procedure, including Rule 15, and was issued after Checkmate had already filed its amended pleading. (*See* Dkt. 30.) The Order instead made one simple holding: that "the Application [for an extension of time to originally file the Counterclaims] shall be DENIED." *Id.* Nothing in the Order prevented Checkmate from exercising its Rule 15(a)(1)(A) right to amend once as a matter of course. For these reasons, the Court should reject Plaintiff's arguments for striking the Counterclaims.

## III.   CHECKMATE HAS ADEQUATELY PLED ITS CLAIMS.

As a general matter, a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When ruling on a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[Q]uestion[s] of fact [are] inappropriate for resolution on a motion to dismiss." *Hybrid Fin. Ltd. v. Hammitt, Inc.*, CV 22-8635 DSF (MRWx), 2023 WL 3150092, at *1 (C.D. Cal. Mar. 6, 2023) (*quoting Greenwich Ins. Co. v. Rodgers*, 729 F.Supp.2d 1158, 1164 (C.D. Cal. 2010)). The court must, rather, accept all allegations of material fact as "true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A court should "'assume the [] veracity' of 'well pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement of relief.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted)).

Furthermore, even where a court determines that a motion to dismiss should be granted, such dismissal should be made with leave to amend the pleading. *See Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de

novo review that the complaint could not be saved by amendment"); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (stating that dismissals under Rule 12(b)(6) and Rule 9(b) "should ordinarily be without prejudice").

### A.     Breach of Contract

Under California law, the elements of a cause of action for breach of contract are "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Albert's Organics, Inc. v. Holzman*, 445 F.Supp.3d 463, 475-76 (E.D. Cal. 2020) (citation omitted).

Checkmate sufficiently pleads that all three relevant contracts—the Merger Agreement, Intellectual Property Acknowledgement, and Assignment of IP and Other Assets—are valid and enforceable agreements. (CC, Dkt. 28, at ¶¶ 28–30.) Moreover, Checkmate has sufficiently pled all required elements supporting breaches of each contract. (*Id.* ¶ 33.) Checkmate has identified each valid contract; described, in detail, its own performance under the contracts; described, in detail, Plaintiff's various breaches of those contracts; and identified the damages suffered by Checkmate as a result of Plaintiff's breaches. No more is required at this stage. *See Albert's Organics*, 445 F.Supp.3d at 475–77 (denying party's motion to dismiss claim for breach of contract where the pleading party identified the "material obligations" that were allegedly breached, identified the bases for finding breach of contract, and alleged that it had "been damaged by the breach of contract").

Plaintiff argues that Checkmate failed to adequately plead damages, contending that a "bare recitation of damages categories – without facts tying any concrete loss to the alleged breach – falls short of that standard." (Dkt. 33 at 18:7-8.) This argument fails. Checkmate's counterclaim clearly identifies a nexus between its losses and Plaintiff's breaches: the IP was the sole reason for the acquisition (CC at

¶¶ 12, 14); Plaintiff warranted clear ownership (*id.* at ¶¶ 17, 30); the IP in fact belonged to at least two other parties (*id.* at ¶¶ 22–25); Checkmate did not receive what it paid for and would not have entered the transaction had it known the (*id.* at ¶¶ 25–26); and Checkmate suffered "direct, consequential, and incidental damages and lost profits" (*id.* at ¶ 34). This provides more than sufficient notice to Plaintiff regarding the nature of Checkmate's claims at the pleading stage. Courts in this Circuit routinely reject similar arguments regarding the sufficiency of breach of contract pleadings. *See, e.g., Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1113 (N.D. Cal. 2020) (finding allegation that product value was "materially less than the value of the [product] set forth in the contract[]" to be sufficient); *Albert's Organics*, 445 F.Supp.3d at 475–77.

Plaintiff also contends that California law does not permit "speculative" lost-profit damage claims. *Sargon Enters., Inc. v. Univ. of S. California*, 55 Cal. 4th 747 (2012). *Sargon* is inapposite for several reasons. First, *Sargon* addressed whether a trial court abused its discretion in excluding expert testimony—specifically, opinion evidence that the plaintiff's company "would have become extraordinarily successful" had the defendant completed clinical testing. *Id.* at 753. The court was acting in its gatekeeping capacity to exclude unduly speculative expert opinions, not evaluating the sufficiency of pleadings under Rule 12(b)(6). *Id.* at 781. Second, the speculative nature of the damages in *Sargon* stands in sharp contrast to Checkmate's straightforward claim: Checkmate paid for IP it did not receive and therefore was prevented from using in the future. That is a concrete, identifiable loss, not a speculative projection of future success. Checkmate has sufficiently pled a breach of contract claim and Plaintiff's arguments to the contrary should be rejected.

## A. Breach of Implied Covenant of Good Faith and Fair Dealing

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 933 (S.D. Cal. 2023), *on reconsideration in part,* No. 21MD2992-GPC(MSB), 2024 WL 3174380 (S.D. Cal. June 25, 2024). This covenant "prevents a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Id.* (cleaned up).

Plaintiff argues that the implied covenant claim is duplicative of the breach of contract claim, relying on *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317 (2000), and therefore subject to dismissal. But *Guz* held that an implied covenant claim fails where it "seeks to impose limits … beyond those to which the parties actually agreed." *Id.* at 352. Here, Checkmate is not using the implied covenant to impose a duty expressly left out of the contract. Instead, the implied covenant claim is supported by allegations of Plaintiff's knowing concealment of material facts leading up to the transaction—conduct that goes beyond mere failure to perform contract terms and instead involves affirmatively depriving Checkmate of the benefits it was due. (CC at ¶¶ 37, 14–16.) *See Storek & Storek, Inc. v. Citicorp Real Est., Inc.*, 100 Cal. App. 4th 44, 59 (2002) (defining lack of good faith as "a moral quality, such as dishonesty, deceit, or unfaithfulness to duty").

Indeed, Checkmate alleges that Plaintiff was "evasive" about allowing Checkmate to review the code prior to the transaction, and that such review would have revealed the code's lack of value and its risk exposure to Checkmate. (CC at ¶¶ 14–18.) Plaintiff's dishonesty and concealment of material facts in the course of the

11

transaction constitutes independent wrongful conduct exceeding the scope of the express terms of the relevant agreements, giving rise to a separate and cognizable claim under the implied covenant of good faith and fair dealing. Checkmate satisfies the applicable notice pleading standard and it has alleged a plausible breach of the implied covenant of good faith and fair dealing under California law.

### B.    Fraud & Fraudulent Concealment

Checkmate's well-pleaded allegations adequately plead fraud under California law. In California, a fraud claim is properly pleaded under the heightened pleading requirements of Rule 9(b) when the party asserting fraud alleges the following: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and, (5) resulting damage. *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638 (1996). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotations & citation omitted).

Checkmate's counterclaim identifies the "who, what, when, where, and how" with the requisite specificity. Plaintiff's arguments to the contrary are simply manufactured attempts to claim ignorance of his own conduct, and the effect of such conduct, that rest on his own unduly narrow recitation of the Counterclaims. Checkmate's Counterclaims identify *who*: Robbert Nessler, co-founder of VoiceBite, who signed the Intellectual Property Acknowledgement and Assignment of IP and Other Assets on April 30, 2024 (CC at ¶¶17, 28–30, 40); *what*: seven specific categories of representations concerning VoiceBite's ownership, authorship, and non-infringement of its IP, in addition to omissions of material fact that Plaintiff knew were material and of which intentionally evaded disclosure to ensure the transaction

12

went through (*id.* at ¶¶ 15–18, 40), *when*: April 30, 2024, the closing date of the transaction and during the negotiation period preceding it (*id.* at ¶¶18, 40); *where*: in the transaction documents executed in connection with the merger and orally "on or about April 30, 2024" (*id.* at ¶¶ 17, 28–29, 40); and *how*: in oral communications, omissions regarding the existence of references to other owners in the VoiceBite code, and through express written representations and warranties in the Intellectual Property Acknowledgement and Assignment of IP (*id.* at ¶¶ 17, 30, 40, 41.) This is sufficient "to give defendant[] notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Swartz*, 476 F.3d at 764 (citation omitted).

First, Plaintiff argues that the fraud claim fails because it groups multiple actors together. Although Rule 9(b) prohibits a claimant from "merely lump[ing] multiple defendants together," it does not require the precision that Plaintiff alleges. *Id.* The Ninth Circuit has held that "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant." *Id.* Further, "[p]articipation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Id.* This is particularly true in cases of corporate fraud—such as plaintiff's and his former company VoiceBite's fraud—where many matters concerning who concealed certain facts may be exclusively within the opposing party's knowledge. *See, e.g.*, *MST Mgmt., LLC v. Chicago Doughnut Franchise Co., LLC*, 584 F. Supp. 3d 923, 931 (D. Nev. 2022) (noting relaxed Rule 9(b) standard in corporate fraud cases where there need only be allegation of "facts on which the belief is founded" and "*where possible*, the roles of the individual defendants in the misrepresentations" (emphasis in original) (quoting

13

*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)). Checkmate points to multiple agreements that Plaintiff signed, which contain misrepresentations, and to the fact that Plaintiff knew of material facts that he chose not to disclose. (CC at ¶¶ 28, 29, 41.) This is sufficient identification of Plaintiff's participation in executing the fraudulent scheme and is distinct from cases that Rule 9(b) is designed to prohibit, namely, those where a plaintiff imposes "enormous social and economic costs absent some factual basis" on a party with no basis to know the factual underpinnings of the allegations. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Second, Plaintiff claims that "the alleged timing and circumstances are too generalized." (Dkt. 33 at 14:5.) Plaintiff's attack on the timing and circumstances of the fraud allegations misapplies Rule 9(b). The governing purpose of Rule 9(b) is *notice* — the standard demands that circumstances of fraud be specific enough to give defendants "adequate notice to allow them to defend the charge." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). That standard is plainly satisfied here. The counterclaims identify a specific calendar date (April 30, 2024), two named executed documents (the Intellectual Property Acknowledgement and the Assignment of IP and Other Assets), specific material facts that were concealed, seven enumerated categories of false representations contained within the documents and made orally, and the specific facts demonstrating their falsity—code predating VoiceBite's formation, pervasive CyborgOps references throughout the codebase, and a written admission that Vasan Varadarajan actually developed the property that Plaintiff claimed to own. (CC at ¶¶ 15–18, 23–24, 40–42.) Plaintiff was co-founder of both CyborgOps and VoiceBite, personally signed the IP representations at issue, and was evasive about allowing code review. He knows precisely what misconduct is charged and can mount a full defense. That is all Rule 9(b) requires.

14

Third, Plaintiff's challenge to the fraudulent concealment theory fails because the counterclaims satisfy multiple independent bases for a duty to disclose under California law as recently synthesized by the California Supreme Court in *Rattagan v. Uber Technologies, Inc.*, 17 Cal. 5th 1 (2024). *Rattagan* confirms that a duty to disclose arises under at least five circumstances, including where "(3) the material facts are known or accessible only to defendant, and defendant knows those facts are not known or reasonably discoverable by plaintiff (i.e., exclusive knowledge); (4) the defendant makes representations but fails to disclose other facts that materially qualify the facts disclosed or render the disclosure misleading (i.e., partial concealment); or (5) defendant actively conceals discovery of material fact from plaintiff (i.e., active concealment)." *Id.* at 40.

The counterclaims satisfy at least three of these categories. As to exclusive knowledge: Plaintiff co-founded CyborgOps, knew its code had been acquired by Presto Automation and knew that "Cyborg" references were pervasive throughout the very code he was warranting as VoiceBite's exclusive property—facts uniquely within his personal knowledge as the founder of both companies (CC at ¶¶ 22–24.) As to partial concealment: Plaintiff made express written representations that VoiceBite owned all relevant IP with no third-party claims, while simultaneously withholding the material fact that the code originated with CyborgOps and Varadarajan—rendering his affirmative disclosures actively misleading (*id.* ¶¶ 17, 40.) As to active concealment: Plaintiff was evasive about allowing code review (*id.* ¶ 16), and UI components within the VoiceBite application had copyright headers apparently changed from "CyborgOPS" to "VoiceBite" (*id.* ¶ 22)—physical alteration of evidence is the paradigm case of active concealment.

Plaintiff's argument that Checkmate's eventual code review defeats the exclusive knowledge and reliance elements inverts the analysis. The California

15

Supreme Court in *Rattagan* reaffirmed that fraudulent concealment and affirmative misrepresentation are legally equivalent: "intentional concealment of a material fact is an alternative form of fraud and deceit equivalent to direct affirmative misrepresentation." *Rattagan*, 17 Cal. 5th at 39–40 (quoting *Stevens v. Superior Court*, 180 Cal. App. 3d 605, 608–09 (1986)). The fact that Checkmate ultimately discovered the truth through its own code review does not defeat the claim—it confirms it.

Fourth, Plaintiff's contention that the counterclaims fail to explain why the specific representations were false asks for an annotation exercise that Rule 9(b) does not require. Moreover, the connections are not puzzles requiring court resolution but self-evident logical inferences. The core factual discoveries map directly and obviously onto the enumerated representations: Plaintiff represented he was the "owner, inventor and/or author" of the assigned IP and that it was not subject to "any claim of any prior employer or third party" (CC at ¶ 40) — the "Copyright 2018" notation predating VoiceBite's August 2023 formation (*id.* ¶ 20), the pervasive CyborgOps references throughout deployment, configuration, and UI files (*id..* ¶¶ 21–22), and the written admission that Varadarajan actually developed the property (*id.* ¶ 24) directly and obviously contradict every one of those ownership and authorship warranties. Checkmate is not required to explicitly annotate each evidentiary fact to each representation when the relationship between them is apparent on the face of the pleading.

Fifth, Plaintiff's claim that the counterclaims provide "essentially no factual basis" for scienter other than Plaintiff's status as a co-founder dramatically understates what the pleading actually alleges. Plaintiff was not merely a co-founder of VoiceBite, he was a co-founder of CyborgOps itself (*id.* ¶ 22), the very company whose code permeated the VoiceBite application he was warranting as original and

16

exclusively owned. A man who co-founded the predecessor company, watched its assets get acquired by Presto Automation, joined Presto as Head of Voice Operations, and then re-emerged as co-founder of a new company built on that same code cannot credibly claim he did not know on April 30, 2024 that the code he was warranting as VoiceBite's exclusive property originated elsewhere. That personal history provides ample factual basis for the inference of scienter at the pleading stage.

Sixth, Plaintiff's demand that Checkmate plead the specific purchase price paid, the precise value received, and a line-by-line causal link between each misrepresentation and each component of loss confuses the pleading standard with the proof standard. Regardless, the causal link is not cryptic: Checkmate paid for something it did not receive, and it would not have entered the transaction at all had it known the truth (CC at ¶ 26.) That is a plausible, non-speculative basis for damages under *Twombly* and *Iqbal*. A company that pays acquisition consideration for IP that turns out to be owned by third parties has plainly suffered a loss, and the precise amount is properly reserved for trial. Nothing more is required at the pleading stage.

### C.    Negligent Misrepresentation

Plaintiff's challenge to the negligent misrepresentation claim fails for the same reasons the fraud claim survives—the Counterclaims identify specific executed documents, a specific date, a named party, and enumerated false representations, satisfying Rule 9(b)'s particularity requirement for the reasons set forth above. As to Plaintiff's argument that negligent misrepresentation requires affirmative misrepresentation rather than mere silence, that argument cuts *against* Plaintiff here: the Counterclaims do not rest on silence alone but on affirmative written representations in the IP Acknowledgement and Assignment of IP that Plaintiff was the owner of the assigned technology, that no third-party claims existed, and that no material facts had been omitted — all of which were affirmative positive assertions

17

made in executed transaction documents (*id.* ¶¶ 17, 49). Under *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407–08 (1992), negligent misrepresentation requires a defendant to make "false statements … without reasonable ground for such belief." A co-founder of CyborgOps who warranted that VoiceBite's code was original and unencumbered, while knowing that the same code was riddled with references to his prior company and developed by a third party, had no reasonable grounds whatsoever for believing those affirmative representations were true. The claim is independently viable and should not be dismissed.

### D.    Declaratory Relief

Plaintiff's argument that the declaratory relief claim must be dismissed because it is "derivative" of the contract claims is unfounded. As the California Court of Appeal recognized in *Fineberg v. Niekerk*, 175 Cal. App. 3d 935, 940 (1985), "[i]t is well established a court may grant damages for breach of contract and declaratory relief in the same action," and that both concern "a controversy relating to the legal rights and duties of the respective parties." Here, Checkmate's declaratory relief claim serves a distinct and forward-looking purpose beyond the breach of contract damages claim: it seeks a declaration that Plaintiff is disentitled to further compensation under the parties' agreements—a prospective controversy with real immediacy given that Plaintiff is actively litigating claims for unpaid wages and bonuses in this very action (CC at ¶¶ 57–59). For these reasons, there is no basis to dismiss the declaratory judgment claim.

### E.    The Economic Loss Doctrine

Plaintiff also argues that the economic loss doctrine bars Checkmate's fraud and negligent misrepresentation counterclaims. (Dkt. 33 at 17–19.) It does not.

The economic loss doctrine does not apply where "a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability

18

for personal damages independent of the plaintiff's economic loss." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 993 (2004). So, the California Supreme Court held in *Robinson Helicopter* that the doctrine did not apply where a helicopter-parts supplier provided non-conforming parts that "exposed [the plaintiff] to liability for personal damages if a helicopter crashed and to disciplinary action by the FAA." *Id.*, 995.  Since *Robinson Helicopter*, the California Supreme Court has affirmed that "the economic loss rule does not apply to limit recovery for intentional tort claims like fraud." *Rattagan*, 17 Cal. 5th at 38 (2024). And courts have rejected economic-loss doctrine challenges to both fraud and negligent misrepresentation claims. *See, e.g.*, *Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.,* 753 F. Supp. 3d 966, 981 (C.D. Cal. 2024) ("[T]he court finds that Plaintiff's negligent misrepresentation claim is not barred by the economic loss doctrine.").

Here, Plaintiff affirmatively misrepresented the nature of the code, refused to provide it for review, and additionally, intentionally omitted material facts related to its legitimacy. (Dkt. 28 at ¶¶ 14–20.) Plaintiff had a duty—independent of the agreements he signed—not to defraud Checkmate in transferring code previously transferred to other entities and in failing to disclose such material facts in advance of the transaction. *See Rattagan*, 17 Cal.5th at 44 (economic loss doctrine does not apply where defendant violated a "duty flowing, not from the contract, but from a separate, legally recognized tort obligation"). And Checkmate suffered harms and may yet suffer harms due to Plaintiff's transfer of code VoiceBite did not own. Indeed, similar to *Robinson Helicopter*, Checkmate has adequately pled that it has been "exposed" to potential intellectual property disputes with and therefore liability to third parties, including Presto Automation, CyborgOps, and Vasan Varadarajan—the apparent other owners of the same code based on the information revealed in Checkmate's review of the code. The Counterclaims make explicit reference to this

19

concern. (Dkt. 28 at ¶¶ 21, 26.) These harms, and Plaintiff's tortious conduct leading to them, are independent of any duties in the parties' agreements.

Under such circumstances, the economic loss rule does not apply, particularly here, at the pleading stage before Checkmate is entitled to engage in discovery into Plaintiff's conduct. *See, e.g.*, *Toyo Tire Holdings of America.*, 753 F. Supp. 3d at 980 (rejecting economic loss rule arguments in context of both fraud negligent misrepresentation claims where defendant made affirmative misrepresentations and omissions); *Dhital v. Nissan N.A., Inc.*, 84 Cal.App.5th 828, 843 (2022) (holding "economic loss rule does not bar plaintiffs' claim here for fraudulent inducement by concealment" which "falls within an exception to the economic loss rule recognized by our Supreme Court").

## IV. More Definite Statement Under Rule 12(e)

Plaintiff's request for relief under Rule 12(e) should also be denied. For the reasons explained *supra*, Checkmate has adequately pled its claims by identifying the relevant who, what, when, where, and how of Plaintiff's fraud, negligence, and breaches. Plaintiff attempts to sow confusion and disregard of Checkmate's allegations based on an unduly narrow and parsed recitation of Checkmate's Counterclaims, but in reality, Plaintiff is plainly on notice of Checkmate's claims against him. Further procedural wrangling in order to add unneeded additional specificity to Checkmate's Counterclaims will place Plaintiff in no better position than he now sits. *See, e.g.*, *Hernandez v. Bank of Am., N.A.*, No. 1:25-CV-00710-KES-HBK, 2026 WL 1346683, at *3 (E.D. Cal. May 14, 2026) ("Rule 8's framework is consistent with Rule 12(e)'s limited role: the rule is designed to address pleadings so vague or ambiguous that a party cannot reasonably prepare a response, not to require evidentiary detail in place of notice pleading."). The Court should permit Plaintiff to

20

engage in discovery to inquire into the bases for Checkmate's well-pled Counterclaims and defend them on their merits.

## V.       CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied in its entirety and Checkmate's Counterclaims allowed to proceed to discovery.

Respectfully submitted,

Dated: June 2, 2026                  BARRIENTOS PC

*/s/ J. Alejandro Barrientos*

J. Alejandro Barrientos
Attorney for Defendant-Counter Claimant
Checkmate.com, Inc.

21

**CERTIFICATE OF COMPLIANCE**

Undersigned counsel of record for defendant-counter claimant Checkmate.com, Inc., certifies that this brief contains fewer than 7,000 words, namely, approximately 5,400 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 2, 2026           */s/J. Alejandro Barrientos*

                                   J. Alejandro Barrientos