JOSEPH E. THOMAS (State Bar No. 101443)
jthomas@twtlaw.com
GRANT J. THOMAS (SBN 325011)
gthomas@twtlaw.com
**THOMAS WHITELAW & KOLEGRAFF LLP**
18101 Von Karman Avenue, Suite 230
Irvine, California 92612-7132
Telephone:    (949) 679-6400
Facsimile:    (949) 679-6405

Attorneys for Plaintiff Robert Nessler

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROBERT NESSLER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHECKMATE, INC., a Delaware Corporation; VISHAL AGARWAL; an individual; DOES 1-10; inclusive.<br><br>Defendants. | **CASE NO.: 2:26-cv-00767-MEMF-AS**<br><br>**PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE COUNTERCLAIMS, OR ALTERNATIVELY, DISMISS**<br><br>Date: July 2, 2026<br>Time: 10:00 am<br>Dept: 8B. 8th Floor<br><br>Compliant Filed: January 26, 2026<br>Trial Date: TBD |

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

## TABLE OF CONTENTS

I.      INTRODUCTION........................................................................................5

II.     THE COUNTERCLAIMS SHOULD BE STRICKEN BECAUSE THEY
        WERE FILED IN VIOLATION OF A COURT-ENTERED STIPULATION 5

        A.      The Court-Entered Stipulation Is an Order of This Court, and It
                Authorized an Answer Only ....................................................................5

        B.      Checkmate Granted Itself the Relief Its Pending Application Sought,
                Then Lost the Application..........................................................................6

        C.      Rule 15(a)(1)(A) Does Not Override an Order This Court Actually
                Entered ......................................................................................................7

        D.      Checkmate Has Not Requested Leave to Amend, So Striking Follows
                Without Further Analysis ..........................................................................7

III.    THE FRAUD-BASED CLAIMS FAIL UNDER RULE 9(b) AND ON THE
        FACE OF THE VERY DOCUMENTS CHECKMATE RELIES ON ............7

        A.      The Counterclaims Are Too Unclear, on Their Own Terms, to Give
                Mr. Nessler Notice of the Fraud Charged ................................................8

        B.      The Only Representations Mr. Nessler Personally Made Are
                Expressly Knowledge-Qualified, and the IP Acknowledgement
                Contains No Representations at All ..........................................................9

        C.      The Assignment Is Self-Limiting: Each Signatory Represents Only as
                to Assets He Himself Authored ...............................................................11

        D.      No Actionable Misrepresentation Made to Checkmate Remains: The
                Written Representations Run to VoiceBite, and Checkmate Has
                Abandoned the Oral Statements...............................................................11

        E.      Damages Remain Conclusory ..................................................................13

IV.     THE NEGLIGENT MISREPRESENTATION CLAIM FAILS FOR THE
        SAME REASONS ......................................................................................13

V.      THE BREACH OF CONTRACT CLAIM FAILS ON THE FACE OF THE
        CONTRACTS CHECKMATE SUED ON ...................................................14

VI.     THE IMPLIED COVENANT CLAIM IS DUPLICATIVE ...........................17

VII.    THE ECONOMIC LOSS RULE BARS THE NEGLIGENT
        MISREPRESENTATION CLAIM AND, AT MINIMUM,
        SUBSTANTIALLY NARROWS THE FRAUD CLAIM................................17

VIII.   THE DECLARATORY RELIEF CLAIM IS DERIVATIVE AND
        REDUNDANT .........................................................................................20

IX.     AT MINIMUM, A MORE DEFINITE STATEMENT UNDER RULE 12(e)

1

IS WARRANTED ........................................................................................................21

X. CONCLUSION .................................................................................................21

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

# TABLE OF AUTHORTIES

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................. 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ........................................ 6, 14

*Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407–08 (1992) ........................................ 12

*Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal. App. 3d 1371, 1394–95 (1990) ........................................................................................................ 16

*Carlin v. Bank of America*, N.A., No. SA CV 25-00219-DFM, 2025 U.S. Dist. LEXIS 129644; 2025 WL 1844217, at *19-21 (C.D. Cal. Mar. 27, 2025).................... 17

*CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999) ............................................. 4

*Chiplinsky v. Home Depot U.S.A., Inc.,* No. 2:25-cv-08550-SSC, 2026 U.S. Dist. LEXIS 92669; 2026 WL 1129909, at *20-22 (C.D. Cal. Aug 22, 2026, 2026) ...................... 17

*Dixon v. JPMorgan Chase Bank, N.A.*, No. 2:22-cv-01726-JLS-JEM, 2022 U.S. Dist. LEXIS 206416; 2022 WL 16859661, at *11-12 (C.D. Cal. Sept. 7, 2022) ................................. 17

*Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107 (N.D. Cal. 2020)............................ 15

*Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349–52 (2000).................................... 15

*Jang v. Boston Sci. Corp.*, 2013 U.S. Dist. LEXIS 202705, at *6–7 (C.D. Cal. Dec. 23, 2013).... 4

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992).......................... 5

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–26 (9th Cir. 2009) ..................................... 7, 11

*Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018)................................. 6

*Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)................................................ 10

*Little Seeds Children's Center, Inc. v. Citibank, N.A.*, 815 F. Supp. 3d 891, 899–900 (C.D. Cal. 2025) ....................................................................................................... 16

*Oasis West Realty, LLC v. Goldman,* 51 Cal. 4th 811, 821 (2011) ......................................... 14

*OJ Commerce LLC v. Traffic Tech., Inc.*, No. CV 24-1407 PA (MAAx), 2024 WL 5694487, at *8 (C.D. Cal. Dec. 17, 2024) ....................................................................................... 5

*Rattagan v. Uber Technologies, Inc.,* 17 Cal. 5th 1, 38 (2024) ........................................... 18

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 993 (2004) ..................................... 17

*Santa Barbara Smokehouse, Inc. v. AquaChile, Inc.,* No. 2:19-cv-10733, 2022 U.S. Dist. LEXIS 40209; 2022 WL 672162, at *19-22 (C.D. Cal. Mar. 4, 2022)..................................... 17

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

*Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022)................................................. 16, 18

*Stichting Pensioenfonds ABP v. Countrywide Fin.* Corp., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ...................................................................................................................................... 10

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)............................................................ 6, 7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ..................................... 11, 12

*Yagman v. Wunderlich*, 2021 U.S. Dist. LEXIS 252983, *3-4 (C.D. Cal. Oct. 4, 2021)............. 10

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff/ Cross-Defendant Robert Nessler respectfully requests this Court grant Mr. Nessler's Motion to Strike or in the alternative Motion to Dismiss. Checkmate's Opposition (ECF 35) cures neither the procedural defect nor the pleading deficiencies identified in Plaintiff's Motion (ECF 33), and the Counterclaims should be stricken or dismissed. The Counterclaims should be stricken because Checkmate filed them in violation of a court-entered stipulation that authorized only an answer, and while its own ex parte application for leave to file them remained pending—relief the Court then denied. The fraud-based claims fail because the documents Checkmate says Mr. Nessler signed contain either no representation at all or only knowledge-qualified representations running to VoiceBite, not Checkmate, and the alleged oral misrepresentations are pleaded without speaker, time, place, or content. The breach of contract claim fails because it remains unclear which agreement Checkmate sues under, and the agreements identified are intra-company instruments to which Checkmate was neither a party nor a payor, supporting no damages beyond a formulaic recitation of the jurisdictional minimum. The remaining claims fail for the reasons stated in the Motion. At a minimum, the pleading's ambiguities warrant a more definite statement under Rule 12(e). For these reasons and the reasons below, Mr. Nessler respectfully requests that the requested relief be granted.

### II.    THE COUNTERCLAIMS SHOULD BE STRICKEN BECAUSE THEY WERE FILED IN VIOLATION OF A COURT-ENTERED STIPULATION

#### A.  The Court-Entered Stipulation Is an Order of This Court, and It Authorized an Answer Only

The parties' stipulation extended only the time to answer the First Amended Complaint and expressly did not extend the time to file counterclaims. (ECF 19). The Court entered that stipulation on those limited terms. (ECF 22). A stipulation entered by the Court is not a private side agreement; it is an order of the Court, enforceable on its own terms. "Because stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent

indications of involuntary or uninformed consent." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999). Courts in this District have stricken amended counterclaims filed in violation of a scheduling stipulation entered by the Court. *Novitzky v. TransUnion LLC,* No. 2:23-cv-04229-SPG-MAR, 2024 U.S. Dist. LEXIS 104878, 2024 WL 5424112, at *3–4 (C.D. Cal. June 11, 2024). Further, A deadline to amend the pleadings set in a scheduling stipulation remains in effect such that a later-sought amendment is governed by Rule 16(b)'s good-cause standard. *Jang v. Boston Sci. Corp.*, 2013 U.S. Dist. LEXIS 202705, at *6–7 (C.D. Cal. Dec. 23, 2013). A party seeking to amend after that deadline must therefore satisfy Rule 16 before the court reaches the Rule 15 factors. *Id.* at *5 Nor is there any ambiguity about what the carve-out meant. This Court has already found, as a matter of record, that "Checkmate did not make explicitly clear during that request that the responsive pleadings would include counterclaims, and Nessler did not actually agree that the responsive pleadings should include counterclaims." (ECF 30 at 2). That is a judicial finding that the stipulation's exclusion of counterclaims was substantive, not clerical: the only filing the parties agreed to, and the only filing the Court's order authorized, was an answer. Checkmate's amended answer asserting five counterclaims is the precise filing the stipulation and the Court's order withheld.

### B. Checkmate Granted Itself the Relief Its Pending Application Sought, Then Lost the Application

Checkmate was served with the First Amended Complaint on March 3, 2026, and by its own account was aware of it no later than March 15, 2026. (ECF 30 at 2). On March 24, 2026, Checkmate filed an ex parte application asking this Court for an extension of time to file counterclaims. (ECF 20). Then, on April 28, 2026—while that application remained pending and undecided—Checkmate filed the very counterclaims that were the subject of its request. (ECF 28). On May 7, 2026, the Court denied the application, finding the predicament "a crisis of Checkmate's own making." (ECF 30 at 2). If Checkmate truly believed Rule 15(a)(1)(A) authorized unilateral counterclaims all along, there would have been no reason to seek ex parte relief to file them. The application reflects Checkmate's contemporaneous understanding that

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

counterclaims required the Court's permission—permission the Court declined to give.

### C. Rule 15(a)(1)(A) Does Not Override an Order This Court Actually Entered

Checkmate's only response is textual: because no Rule 16(b) scheduling order had issued, nothing displaced its right to amend its answer once as a matter of course. Opp. at 6–8. But the question is not whether an order bearing the Rule 16 label existed; it is whether Rule 15(a)(1) may be used to nullify an order the Court actually entered fixing what could be filed and when. It may not. The structural logic of *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992), applies with full force: if a party could invoke Rule 15(a)(1) without regard to the orders governing its pleadings, those orders "would become optional"—a result the Ninth Circuit has squarely rejected. The same principle animates *OJ Commerce LLC v. Traffic Tech., Inc.*, No. CV 24-1407 PA (MAAx), 2024 WL 5694487, at *8 (C.D. Cal. Dec. 17, 2024): the amendment rules do not confer an unrestricted right to add omitted counterclaims in contravention of court-imposed limits without consent or leave.

### D. Checkmate Has Not Requested Leave to Amend, So Striking Follows Without Further Analysis

The counterclaims stand as an unauthorized filing made in violation of a court-entered stipulation. Despite this, Checkmate has never requested leave to file its Counterclaims under Rule 15 or Rule 16. The Court should strike these Counterclaims under Rule 12(f) and its inherent authority to enforce its own orders.

### III.    THE FRAUD-BASED CLAIMS FAIL UNDER RULE 9(b) AND ON THE FACE OF THE VERY DOCUMENTS CHECKMATE RELIES ON

Checkmate's claims relating to the affirmative misrepresentations made by Mr. Nessler are not clear and thus fail under Rule 9(b). Checkmate defends Rule 9(b)'s "who" and "where" requirements almost entirely by pointing to the Intellectual Property Acknowledgement and the Assignment of IP and Other Assets that Mr. Nessler "personally signed" on April 30, 2024. Opp. at 12–13. The Counterclaims quote those agreements verbatim, Countercl. ¶¶ 17, 28–30, 40, and they form the basis of the First, Third, and Fourth Claims; they are accordingly incorporated by

reference and may be considered on this Motion. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018). Separate but identical agreements —executed on the same April 30, 2024 closing date by VoiceBite co-founder Arjun Vasan—were publicly filed on the docket of Checkmate's filed and dismissed against VoiceBite co-founder Arjun Vasan, *Checkmate.com, Inc. v. Vasan*, No. 1:25-cv-03181-JMF (S.D.N.Y.). These documents are the subject of Plaintiff's concurrently filed Request for Judicial Notice. RJN Exs. A–B. The language the Counterclaims quote in ¶¶ 17 and 40 tracks Section 3 of the publicly filed Assignment word for word, confirming that the form is the agreement on which Checkmate sues.

### A. The Counterclaims Are Too Unclear, on Their Own Terms, to Give Mr. Nessler Notice of the Fraud Charged

Checkmate concedes that Rule 9(b) governs its fraud-based claims. Opp. at 12. Rule 9(b) and *Twombly* require that the pleading itself give Mr. Nessler notice of the particular misconduct charged—the who, what, when, where, and how—so that he "can defend against the charge and not just deny that [he has] done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Counterclaims do not clear that bar, and the Court need not consult a single document to see why: the defect is that the pleading itself leaves the essential questions unanswered.

First, the Counterclaims never say which statements Mr. Nessler made in his individual capacity. He is sued personally, yet ¶ 40 alleges in one undifferentiated breath that he acted "on his own behalf and on behalf of VoiceBite," and ¶ 17 recites that "[s]uch representations included" a list of warranties without identifying which, if any, Mr. Nessler made as an individual rather than as a corporate officer. Whether a given representation was his or VoiceBite's is the threshold fact on which his personal liability depends, and the pleading never draws the line. That is precisely the lumping Rule 9(b) forbids. *Swartz*, 476 F.3d at 764–65.

Second, the Counterclaims do not say which agreement supposedly contains which representation. Paragraph 30 bundles "the Intellectual Property Acknowledgement and Assignment of IP And Other Assets agreements" together and alleges that representations were

8

made "[p]ursuant to the terms" of both, without attributing any particular warranty to either instrument. Countercl. ¶¶ 28–30. Checkmate's Opposition then injects a third agreement—the Merger Agreement, Opp. at 9—that the First Claim never pleaded as breached. A defendant cannot frame a response when the pleading does not tell him which contract is said to contain which promise.

Third, the Counterclaims lump oral and written misrepresentations together and date them all to a single day. Paragraphs 40 and 49 allege "oral and written misrepresentations, all of which were made on or about April 30, 2024," then list seven categories without identifying which were spoken rather than written, who spoke to them, to whom, or where. An allegation that unspecified representations were made "orally and in writing" on one date discloses neither the "where" nor the "how" that Rule 9(b) demands. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–26 (9th Cir. 2009).

Fourth, the damages allegations are a legal conclusion, not a statement of fact. The Counterclaims plead only that Checkmate suffered damages "in an amount to be proved at trial in excess of the jurisdictional minimum of this court," Countercl. ¶ 34; accord id. ¶¶ 46, 54—with no figure for what Checkmate paid, no figure for what it received, and no facts tying any quantum of loss to any particular breach or misrepresentation. A bare recitation that damages exceed a threshold is "a legal conclusion couched as a factual allegation" entitled to no assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

These are not demands for evidentiary detail; they are the basic content a fraud pleading must supply so that the defendant can admit, deny, and assert defenses. Because the Counterclaims leave unanswered—on their own face—who made each statement, in what capacity, in which instrument, by what medium, and with what resulting loss, they fail Rule 9(b) and Twombly without reference to any document. At minimum, these same ambiguities require a more definite statement under Rule 12(e). See § IX, infra.

**B. The Only Representations Mr. Nessler Personally Made Are Expressly Knowledge-Qualified, and the IP Acknowledgement Contains No**

9

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

**Representations at All**

Section 3 of the Assignment of IP and Other Assets begins: "The Assignor represents and warrants to the Company that, to the best of Assignor's knowledge, (a) the Assignor is the owner, inventor and/or author of . . . each of the Assigned Assets transferred by the Assignor hereunder." RJN Ex. A § 3 (emphasis added). The Counterclaims quote the operative phrases—"owner, inventor and/or author," "any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party"—with the knowledge qualifier stripped out, presenting them to the Court as absolute warranties. Countercl. ¶¶ 17, 40. They are not. A representation expressly qualified "to the best of Assignor's knowledge" is false only if the maker actually knew the contrary at the time he made it.

The Counterclaims separately allege that Mr. Nessler entered into a written Intellectual Property Acknowledgement. Countercl. ¶ 28. The form of that acknowledgement is a matter of public record, RJN Ex. B, and it contains no representation or warranty by its signatory at all. Its operative verb is "acknowledge": the signatory acknowledges Section 5.9(f) of the Merger Agreement—a representation made by "the Company," i.e., VoiceBite, concerning non-infringement—and acknowledges an obligation set forth in Section 1.4 of a separate Employee Confidential Information and Inventions Assignment Agreement that the signatory "will enter into" in the future. Acknowledging that the Merger Agreement contains a representation is not the making of that representation; the document contains no "represents and warrants" language and affirms the truth of nothing. The Counterclaims' attribution to "Plaintiff" of the non-infringement representation, Countercl. ¶ 40, thus attributes to Mr. Nessler personally a representation the documents show was made by VoiceBite in the Merger Agreement and merely acknowledged by him.

Falsity and scienter therefore merge, and the pleading burden Checkmate must carry is correspondingly higher: it cannot plead falsity by alleging that the code was in fact encumbered or previously authored; it must plead particularized facts showing what Mr. Nessler actually knew on April 30, 2024. It has not. The strongest fact pleaded—a January 23, 2025 written admission by

10

an unnamed "colleague"—postdates the closing by nearly nine months and is attributed to a third party, not to Mr. Nessler. Countercl. ¶ 24. Mr. Nessler's biography supplies at most background; it does not plead contemporaneous actual knowledge that representations he expressly qualified by his knowledge were false when made. Indeed, the Assignment itself contemplates the possibility of later-discovered claims: the Assignor "agrees to immediately notify the Company upon becoming aware of any such claims." RJN Ex. A § 3. Later awareness triggers a contractual notice obligation to VoiceBite; it is not evidence of closing-date fraud.

### C. The Assignment Is Self-Limiting: Each Signatory Represents Only as to Assets He Himself Authored

The Assignment's own definitions foreclose Checkmate's reading of the representations. "Technology" is defined as items "authored, conceived, invented, developed or designed by the Assignor, solely or jointly with others." RJN Ex. A § 1(f) (emphasis added). And the Section 3(a) representation extends only to "each of the Assigned Assets transferred by the Assignor hereunder." RJN Ex. A § 3(a). Each signatory's representation thus speaks, by definition, only to that signatory's own contributions. Mr. Nessler's representation cannot be read as a warranty that he authored or owned the VoiceBite application code, because if he did not author the code, the code was never among his Assigned Assets, and his representation never spoke to it at all. Checkmate's contrary reading depends entirely on the parenthetical gloss it inserts into the pleading—"(namely, a 'comprehensive set of components of an AI voice ordering system')", Countercl. ¶ 40—language that appears nowhere in Section 3 of the Assignment, RJN Ex. A. The Counterclaims' characterization of an incorporated document cannot override the document itself.

### D. No Actionable Misrepresentation Made to Checkmate Remains: The Written Representations Run to VoiceBite, and Checkmate Has Abandoned the Oral Statements

Fraud requires a misrepresentation made to the claimant, or made with the intent that it reach and induce the claimant. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). The written representations Checkmate identifies satisfy neither requirement as pleaded. Section 3 of the

11

Assignment states that "[t]he Assignor represents and warrants to the Company"—that is, to VoiceBite—and the Assignor's notification duty likewise runs "to the Company." RJN Ex. A § 3. These were representations made to Mr. Nessler's own company in an intra-company assignment to which Checkmate was not a party. The structural point bears emphasis: of the two documents on which Checkmate stakes its Opposition, the one delivered to Checkmate—the IP Acknowledgement—contains no representations, and the one containing representations—the Assignment—runs to VoiceBite. The Counterclaims' bare assertion that Checkmate is an "assignee and third party beneficiary," Countercl. ¶ 29, is a legal conclusion, unsupported by any identified assignment or any provision of the documents conferring third-party-beneficiary status—and in any event, an assignment of contract rights does not transmute representations made to one's own company into misrepresentations made to the acquirer on which the acquirer itself relied.

Checkmate has effectively abandoned the alleged oral statements. If a party fails to respond to an argument made on a motion to dismiss, a court may find such failure constitutes waiver or abandonment of the issue. *Yagman v. Wunderlich*, 2021 U.S. Dist. LEXIS 252983, *3-4 (C.D. Cal. Oct. 4, 2021); *see also Stichting Pensioenfonds ABP v. Countrywide Fin.* Corp., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." [internal quotation marks omitted].) As the Motion showed, the Counterclaims plead the oral statements with no speaker, no recipient, no date, no place, and no content. (ECF 33 at 13–14); see *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–26 (9th Cir. 2009). The Opposition does not defend these statements. Instead, its entire particularity showing rests on the two signed documents, and its only reference to oral statements repeats the pleading's phrase—"orally 'on or about April 30, 2024'"—without supplying a single particular. Opp. at 12–14. Checkmate itself describes its claims as resting on "affirmative written representations" in the executed transaction documents, "not" on "silence alone." Opp. at 17. Thus, Checkmate's position is that no oral statements were made at

12

all. In sum, that position has been abandoned. The syllogism is straightforward: the oral statements abandoned; the written representations incorporated by reference were not made to Checkmate, and a concealment theory cannot rescue the claim for the reasons shown below. No misrepresentation made to Checkmate is pleaded with the particularity Rule 9(b) requires, and the Third Claim should be dismissed in its entirety.

### E.  Damages Remain Conclusory

Scienter is addressed in Section III.A above: because the representations are knowledge-qualified, particularized allegations of Mr. Nessler's actual contemporaneous knowledge are not merely an element of the claim but the predicate of falsity itself, and the Counterclaims supply none. On damages, Checkmate says it paid for something it did not receive and would not have entered the transaction had it known the truth. Opp. at 17. That remains abstract. The Counterclaims do not allege what Checkmate paid, what value it received, what portion of the consideration was attributable to the allegedly defective IP, whether any third party has asserted a claim, what remediation costs were incurred, or any non-speculative basis for lost profits. (ECF 33 at 15–16). Labels are not facts, and the Opposition adds none from the pleading.

### IV.    THE NEGLIGENT MISREPRESENTATION CLAIM FAILS FOR THE SAME REASONS

Checkmate does not dispute that Rule 9(b) applies to its negligent misrepresentation claim, which rests on the same unified course of allegedly fraudulent conduct. *Vess*, 317 F.3d at 1103–06. Because the underlying particulars remain deficient for all the reasons above, the claim fails with the fraud claim—and it fails for the additional, independent reasons that the written representations on which it rests are knowledge-qualified and were made to VoiceBite, not to Checkmate. See §§ III.A–C, supra. Checkmate's own framing confirms the point: it defends the claim as resting on "affirmative written representations" in the executed transaction documents, Opp. at 17, but those are the very representations Section 3 of the Assignment directs "to the Company." The claim is also independently deficient under California law: negligent misrepresentation requires a positive assertion made without reasonable grounds for believing it

true, *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407–08 (1992), and a representation expressly limited to the maker's knowledge of his own contributed assets cannot be recast as a groundless assertion about a codebase the documents never warranted he authored.

## V.    THE BREACH OF CONTRACT CLAIM FAILS ON THE FACE OF THE CONTRACTS CHECKMATE SUED ON

First, neither contract contains the obligation Checkmate alleges was breached. The Counterclaims allege that Mr. Nessler breached "by bringing intellectual property owned and subject to claims by third parties and failing to provide rights to VoiceBite's intellectual property." Countercl. ¶ 33; see id. ¶ 28 (alleging the IP Acknowledgement "prevented" Plaintiff from bringing third-party IP to Checkmate). But the IP Acknowledgement imposes no such obligation—or any substantive obligation at all: it acknowledges a representation made by VoiceBite in the Merger Agreement and an obligation residing in a separate employment agreement the signatory "will enter into" in the future. RJN Ex. B. And the Assignment contains no covenant prohibiting anything; it is a conveyance of the Assignor's own assets accompanied by representations expressly qualified "to the best of Assignor's knowledge." RJN Ex. A §§ 2–3. A party cannot breach a duty the contract does not contain. Nor do the Assignment's representations supply the missing obligation in substance: they concern only "each of the Assigned Assets transferred by the Assignor hereunder"—the Assignor's own personal intellectual property—so Mr. Nessler made no personal representation about VoiceBite's code at all. RJN Ex. A §§ 1(f), 3(a); see § III.B, supra. The breach theory therefore reduces to the knowledge-qualified representations—and a knowledge-qualified representation is breached only if the maker actually knew the contrary when he made it, which collapses the contract claim into the same unpleaded showing of Mr. Nessler's actual contemporaneous knowledge that defeats the fraud claim. See § III.A, supra.

Second, it remains uncertain what agreement Checkmate is suing under—and on the only record available, the Assignment is not an agreement with Checkmate at all. The Counterclaims attach no contract. The Opposition compounds the uncertainty by asserting that Checkmate pleaded "all three relevant contracts—the Merger Agreement, Intellectual Property

14

Acknowledgement, and Assignment of IP and Other Assets." Opp. at 9. The First Claim does no such thing: by its caption and its operative allegations, it pleads breach of only the Acknowledgement and the Assignment, Countercl. ¶¶ 27–33, and a party may not amend its pleading through statements in an opposition brief. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). If Checkmate intends to sue on the Merger Agreement, it must seek leave to plead that claim. Nor would the Merger Agreement supply what the pleaded contracts lack. The executed Merger Agreement is now of record, and it shows that Mr. Nessler signed it on behalf of VoiceBite Corporation—not in his individual capacity. RJN Ex. C. A representation made in an agreement executed on behalf of a corporate party is the corporation's representation, not the signing officer's personal undertaking. And the only ¶ 40 representation that appears in the Merger Agreement—Section 5.9's non-infringement representation—is not a representation of ownership or authorship at all. It represents that the Company and its products have not "infringed upon, misappropriated or violated . . . any Intellectual Property rights of any Person," and that the Company "has not received from any Person any written notice or claim" of infringement. RJN Ex. C § 5.9. Infringement is a legal conclusion about the rights of third parties— not a statement of who authored or owns the code—and the Counterclaims plead no infringement: no notice, no claim, no proceeding, only allegations about the code's authorship history. The ownership and authorship representations on which the Counterclaims actually rest appear only in the Assignment, RJN Ex. A § 3—the one agreement of the three to which Checkmate is not a party. As for the two contracts actually pleaded: on the form agreement of record, the Assignment's parties are the Assignor and "the Company"—VoiceBite—its representations and notification duty run to the Company, and Checkmate's name appears nowhere in it. RJN Ex. A § 3. The Assignment of record, notably, was filed in Checkmate's own pending action against another VoiceBite co-founder, *Checkmate.com, Inc. v. Vasan*, No. 1:25-cv-03181-JMF (S.D.N.Y.)—an action whose very existence underscores that these are separate agreements, each between an individual and VoiceBite, not with Checkmate. Checkmate's entire claim of entitlement is the conclusory phrase "assignee and third party beneficiary." Countercl. ¶ 29. No assignment of

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

VoiceBite's rights is identified, and the documents contain no third-party-beneficiary language; the Assignment's successors-and-assigns clause merely permits the Company to assign, RJN Ex. A § 5(d)—it does not allege that it did. The transaction's own structure underscores the problem: the IP Acknowledgement recites a merger "by and among Checkmate, VoiceBite Merger Sub, Inc., VoiceBite Corporation" and the stockholders, RJN Ex. B—a merger-subsidiary structure in which VoiceBite's contract rights vest in the surviving corporation, not in the acquiring parent, absent an actual assignment the Counterclaims nowhere plead.

Third, the damages alleged are not damages from breach of these contracts—and the Counterclaims contain no clear allegation of what those damages are. Damages are an essential element of breach of contract, *Oasis West Realty, LLC v. Goldman,* 51 Cal. 4th 811, 821 (2011), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), require facts plausibly connecting the claimed loss to the breach alleged. The only quantification the First Claim offers is the formulaic allegation that Checkmate has suffered damages "in an amount to be proved at trial in excess of the jurisdictional minimum of this court." Countercl. ¶ 34. That is a legal conclusion, not a fact. First, Checkmate did not pay for the Assignment: the recited consideration ran from VoiceBite, the Assignment's counterparty—not from Checkmate, whose name appears nowhere in the document. RJN Ex. A § 2(a). Second, even where Checkmate treated as having paid—or as standing in VoiceBite's shoes—the consideration for the entire package of representations on which it sues was $100.00, and those representations concerned only the transfer of each signatory's personal intellectual property to VoiceBite; they did not extend to a representation that Mr. Nessler personally owned any code, and Mr. Nessler made no personal representation about VoiceBite's code. No facts are pleaded that make it plausible that breach of a $100 intra-company conveyance of one individual's personal intellectual property produced damages exceeding the jurisdictional minimum. The losses Checkmate actually describes—merger consideration paid for an entity worth less than represented, and lost profits from the acquisition, Countercl. ¶¶ 25–26, 34—flow, if from anything, from the Merger Agreement, the contract the First Claim does not plead. *Freeman v. Indochino Apparel, Inc.*, 443

16

F. Supp. 3d 1107 (N.D. Cal. 2020), on which Checkmate relies, involved a contract between the litigating parties under which the plaintiff itself paid; it says nothing about an instrument the claimant neither executed nor funded. Even accepting every damages allegation as true, the pleading supplies no plausible nexus between acquisition-level losses and breach of the instruments sued on. The Counterclaims' own references to "notices of breach" and demands for indemnification, Countercl. ¶¶ 57–58, confirm that the parties' acquisition agreement contains a contractual remedy regime—one Checkmate has bypassed by suing Mr. Nessler on the ancillary documents instead. The First Claim should be dismissed under Rule 12(b)(6); at minimum, Checkmate should be ordered under Rule 12(e) to provide a more definite statement identifying the contract it sues under, the basis of its entitlement to enforce it, and the damages it claims from its breach. See § IX, infra.

## VI.    THE IMPLIED COVENANT CLAIM IS DUPLICATIVE

The Second Claim remains superfluous and should be dismissed. Checkmate argues its implied covenant claim rests on concealment and dishonesty that "goes beyond" breach of the express terms. Opp. at 11–12. But the conduct it cites is the very conduct underlying its contract and fraud claims: alleged misrepresentations and concealment concerning the ownership and quality of the acquired IP. Under *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349–52 (2000), and *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal. App. 3d 1371, 1394–95 (1990), an implied covenant claim cannot simply repackage the same alleged breach as bad faith. The Opposition identifies no separate discretionary contractual power exercised unfairly, no independent gap in the agreements that the covenant fills, and no distinct damages.

## VII.   THE ECONOMIC LOSS RULE BARS THE NEGLIGENT MISREPRESENTATION CLAIM AND, AT MINIMUM, SUBSTANTIALLY NARROWS THE FRAUD CLAIM

The complaint alleges that the same contractual representation (Countercl. ¶ 17) as the basis for the fraud and negligent misrepresentation claims (Countercl. ¶¶ 40, 43, 49, 51). Based on those contractual representations, Checkmate seeks only economic losses. Countercl. ¶¶ 46, 54. The

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

economic loss rule bars the claims the fourth counter claim for negligent misrepresentation, and bars the third counter claim for intentional misrepresentation.

The Fourth Claim is barred outright. Negligent misrepresentation is a negligence-based tort, and the economic loss rule bars negligence-based recovery of purely economic losses arising from disappointed contractual expectations. See *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) ("[T]here is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage."). Nor does it matter that the alleged misrepresentations preceded the closing: the rule reaches contract formation as well as performance—"there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." *Id.* at 923 (quoting Rest.3d Torts, Liability for Economic Harm, § 3) (emphasis added). This District applied exactly that framework, post-Rattagan, in *Little Seeds Children's Center, Inc. v. Citibank, N.A.*, 815 F. Supp. 3d 891, 899–900 (C.D. Cal. 2025), dismissing a negligent misrepresentation claim where the only alleged harm was purely economic loss falling within the reasonable contemplation of the parties' agreement—and contrasting it with the Robinson Helicopter plaintiff's exposure to personal-injury liability and FAA discipline. *Little Seeds* is no outlier: courts applying California law have consistently dismissed misrepresentation claims seeking purely economic losses arising from a contractual relationship. See *Chiplinsky v. Home Depot U.S.A., Inc.,* No. 2:25-cv-08550-SSC, 2026 U.S. Dist. LEXIS 92669; 2026 WL 1129909, at *20-22 (C.D. Cal. Aug 22, 2026, 2026) (dismissing negligent misrepresentation claim under the economic loss rule where the claim rested on the same conduct as the breach of contract claim and was not independent of the contractual duties); *Carlin v. Bank of America*, N.A., No. SA CV 25-00219-DFM, 2025 U.S. Dist. LEXIS 129644; 2025 WL 1844217, at *19-21 (C.D. Cal. Mar. 27, 2025) (dismissing negligence claims where the alleged wrongful conduct caused only economic loss arising from the parties' contractual relationship and no independent tort duty existed); see also *Dixon v. JPMorgan Chase Bank, N.A.*, No. 2:22-cv-01726-JLS-JEM, 2022 U.S. Dist. LEXIS 206416; 2022 WL 16859661, at *11-12 (C.D. Cal. Sept. 7, 2022) (rule maintains the boundary between tort and contract where no injury to person or

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

property is alleged). Checkmate's alleged harm is indistinguishable: it claims it "did not purchase the valuable entity that it had been led to believe it was purchasing," Countercl. ¶ 25, and seeks "direct, consequential, and incidental losses and lost profits," id. ¶ 54—textbook expectancy damages. Toyo Tire, on which Checkmate relies, predates neither Rattagan's framework nor Little Seeds' application of it to these facts. The Fourth Claim should be dismissed on this independent ground.

The Third Claim's affirmative-misrepresentation theory fares no better under Robinson Helicopter, whose exception the California Supreme Court described as "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Robinson Helicopter Co. v. Dana Corp*., 34 Cal. 4th 979, 993 (2004). Courts in this District have enforced that limitation, applying the economic loss rule to foreclose fraud-based theories seeking the same purely economic losses as the parties' contract claims where no exposure to independent liability is shown. See *Santa Barbara Smokehouse, Inc. v. AquaChile, Inc.,* No. 2:19-cv-10733, 2022 U.S. Dist. LEXIS 40209; 2022 WL 672162, at *19-22 (C.D. Cal. Mar. 4, 2022). No such exposure is pleaded here.

As for the concealment theory, Plaintiff does not contend that *Rattagan* categorically bars it—*Rattagan* held the opposite, conditionally. But *Rattagan's* conditions are not met. A concealment claim arising from a contractual relationship may proceed only if its elements "can be established independently of the parties' contractual rights and obligations and the tortious conduct exposes the plaintiff to a risk of harm beyond the reasonable contemplation of the parties when they entered into the agreement." *Rattagan v. Uber Technologies, Inc.,* 17 Cal. 5th 1, 38 (2024); accord *Sheen,* 12 Cal. 5th at 923 (tort claims for monetary losses between contracting parties "are barred when they arise from—or are not independent of—the parties' underlying contracts"); *Cisneros v. Freedom Mortgage Corp.,* No. EDCV 23-1019 JGB (KKx), 2023 U.S. Dist. LEXIS 155612, 2023 WL 6783306 at *9–12 (C.D. Cal. Aug. 31, 2023) (dismissing fraud, negligent misrepresentation, and promissory estoppel claims where the tort claims were "not

19

independent of" the parties' contract and plaintiffs alleged no "harm above and beyond a broken contractual promise") (citation omitted). Neither condition is satisfied. The alleged duty to disclose, Countercl. ¶ 45, is coextensive with the contractual disclosure representations themselves—the very "no material omissions" warranty Checkmate pleads at ¶ 17—so the claim cannot be established independently of the contractual obligations; it merely restates them with the word "fraudulent" attached. And the alleged harm sits at the core of, not beyond, the parties' contemplation: the risk that the acquired IP might be encumbered or owned by others is precisely the risk the parties allocated through representations, warranties, and—by the Counterclaims' own account—an indemnification regime under which Checkmate has already served "notices of breach" and demanded indemnification. Countercl. ¶¶ 57–58. A risk the parties expressly contracted remedies for is, by definition, within their reasonable contemplation—the economic loss rule exists so that "parties [can] make dependable allocations of financial risk without fear that tort law will be used to undo them later." *Sheen*, 12 Cal. 5th at 923 (quoting Rest.3d Torts, Liability for Economic Harm, § 3, com. b).

Checkmate's answer—that it has been "exposed" to potential intellectual-property disputes with Presto Automation, CyborgOps, and Mr. Varadarajan, Opp. at 19–20—fails twice over. First, that theory appears in the Opposition, not the Counterclaims; a party may not amend its pleading through its brief. The Counterclaims allege only, in conclusory fashion, that "Cyborg" references denote "a third party with claims to the code." Countercl. ¶ 21. Second, even as asserted, the exposure is hypothetical: more than two years after the closing, the pleading identifies no claim, demand, or proceeding asserted by any third party against Checkmate—nothing comparable to the actual prosecution in *Rattagan* or the actual regulatory and personal-injury exposure in *Robinson Helicopter*. Hypothetical future exposure to economic claims is not harm beyond the contemplation of parties to an IP acquisition; it is the subject matter of the acquisition's warranties. Under *Rattagan* and *Little Seeds*, the Fourth Claim should be dismissed and the Third Claim dismissed or substantially narrowed.

## VIII.    THE DECLARATORY RELIEF CLAIM IS DERIVATIVE AND

**REDUNDANT**

The Fifth Claim remains derivative of the contract and tort theories, and if those claims are deficient, it necessarily fails with them. Checkmate argues the declaratory relief claim serves a forward-looking purpose because it seeks a declaration that Mr. Nessler is not entitled to further compensation while he pursues wage and bonus claims in this action. Opp. at 18. But that confirms the claim's redundancy: the same issues—whether Mr. Nessler breached, whether Checkmate is excused, whether indemnification is owed—will be resolved by the coercive claims and defenses already before the Court.

## IX.    AT MINIMUM, A MORE DEFINITE STATEMENT UNDER RULE 12(e) IS WARRANTED

Checkmate argues Rule 12(e) is reserved for pleadings so vague or ambiguous that a party cannot reasonably prepare a response. Opp. at 20. Plaintiff's Motion framed the request in exactly those terms and showed why the standard is met. (ECF 33 at 19–21). The ambiguity here is not a demand for evidentiary detail; it concerns foundational matters necessary to admit, deny, or assert defenses. Checkmate's own filings illustrate the ambiguity: the First Claim pleads breach of two contracts—the IP Acknowledgement and the Assignment, Countercl. ¶¶ 27–33—while the Opposition describes the claim as resting on "all three relevant contracts," including a Merger Agreement the claim never mentions. Opp. at 9. If Checkmate cannot consistently identify the contracts it sues on, Mr. Nessler cannot reasonably be expected to answer for breaching them. And the only quantification pleaded anywhere in the First Claim is the formulaic allegation of damages "in excess of the jurisdictional minimum," Countercl. ¶ 34—attached to contracts whose recited consideration, on the form agreements of record, was $100.00, paid by VoiceBite, not Checkmate. RJN Ex. A § 2(a). Mr. Nessler cannot reasonably frame an answer—or assess defenses such as lack of standing, failure of consideration, or offset—without knowing which contract Checkmate claims entitles it to sue, what Checkmate itself paid, and what damages it attributes to the breach of which instrument.

## X.    CONCLUSION

21

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

For the foregoing reasons and those stated in the Motion, Plaintiff respectfully requests that the Court strike the Counterclaims as unauthorized; alternatively, dismiss the First through Fifth Counterclaims under Rule 12(b)(6) and the Third and Fourth Counterclaims under Rule 9(b); or, at minimum, order Checkmate to provide a more definite statement under Rule 12(e); and grant such further relief as the Court deems just and proper.

DATED:  June 9, 2026                          THOMAS WHITELAW & KOLEGRAFF LLP


By:          */s/ Grant J. Thomas*
            JOSEPH E. THOMAS
            GRANT J. THOMAS
            Attorneys for Plaintiff

22

PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE

**CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Central District of California by using the Court's CM/ECF system.

I certify that all participants in this case who are registered CM/ECF users will be served by the CM/ECF system and that service will be accomplished by the Court's electronic filing system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 9, 2026, at Irvine, California.

*/s/ Joseph E. Thomas*
Joseph E. Thomas
Attorney for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Robert Nessler, certifies that this brief contains 6,342 words, which complies with the word limit of L.R. 11-6.1.

DATED:  June 9, 2026                    THOMAS WHITELAW & KOLEGRAFF LLP

By:      *   /s/ Joseph E. Thomas*
JOSEPH E. THOMAS
GRANT J. THOMAS
Attorneys for Plaintiff

23
PLAINTIFF ROBERT NESSLER'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE