JOSEPH E. THOMAS (State Bar No. 101443)
*jthomas@twtlaw.com*
GRANT J. THOMAS (SBN 325011)
*gthomas@twtlaw.com*
**THOMAS WHITELAW & KOLEGRAFF LLP**
18101 Von Karman Avenue, Suite 230
Irvine, California 92612-7132
Telephone: (949) 679-6400
Facsimile: (949) 679-6405

Attorneys for Plaintiff Robert Nessler

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

ROBERT NESSLER, an individual,

Plaintiff,

vs.

CHECKMATE, INC., a Delaware Corporation; VISHAL AGARWAL; an individual; DOES 1-10; inclusive.

Defendants.

**CASE NO.: 2:26-cv-00767-MEMF-AS**

**PLAINTIFF ROBERT NESSLER'S OPPOSITION TO CHECKMATE.COM, INC.'S MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER AND COUNTERCLAIMS**

[Filed concurrently with Ex Parte Application for Order Accepting Late-Filed Opposition; Declaration of Grant J. Thomas; and [Proposed] Orders]

Hearing Date: December 3, 2026
Time: 10:00 a.m.
Courtroom: 8B
Judge: Hon. Maame Ewusi-Mensah Frimpong

Complaint Filed: January 26, 2026
Trial Date: Not set

# Table of Contents


**I. INTRODUCTION** .......... 6

**II. BACKGROUND** .......... 7

**A. The Transaction** .......... 7

**B. Checkmate's Prior Attempts to Plead Counterclaims** .......... 8

**C. The Parties' Proposed Schedule** .......... 8

**D. This Motion** .......... 8

**III. LEGAL STANDARD** .......... 9

**IV. ARGUMENT** .......... 9

**A. Checkmate's Delay Is Undue and Unexplained.** .......... 9

***1. Checkmate has known the facts and theories since the fall of 2024.*** .......... 9

***2. Checkmate's own proposed schedule would bar this motion.*** .......... 10

***3. The delay is Checkmate's own doing.*** .......... 10

***4. This is Checkmate's third version of the counterclaims.*** .......... 11

**B. The Amendment Is Futile Because the Contract Counterclaims Cannot Be Asserted Against Nessler Individually.** .......... 11

***1. Checkmate alleges that the Merger Agreement representations were VoiceBite's.*** .......... 11

***2. The Acknowledgement contains no representation and no covenant.*** .......... 13

***3. The Assignment statements are a co-founder's, made to VoiceBite.*** .......... 13

***4. The implied covenant claim falls with the contracts.*** .......... 14

**C. The Merger Agreement Makes Section 8 Indemnification the Exclusive Remedy for Non-Fraud Claims, and Checkmate Pleads No Such Claim.** .......... 14

**D. The Fraud and Negligent Misrepresentation Counterclaims Remain Futile.** .......... 16

***1. The quoted representations do not say what Checkmate says they say.*** .......... 16

***2. Checkmate does not plead falsity, knowledge, or a***

*misrepresentation made to it.* ........................................................16

3. *Negligent misrepresentation is not pleaded and is barred twice over.* ........................................................18

4. *Damages are not pleaded.* ........................................................18

**E. The Declaratory Relief Counterclaim Is Futile.** ........................................19

**F. Checkmate's Remaining Arguments Do Not Warrant Leave.** ............20

**G. At a Minimum, the Court Should Not Deem Exhibit A Filed.** ............21

**V. CONCLUSION** ........................................................................................21

Cases

*Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1035–36, 1064 (Del. Ch. 2006) ..... 15

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)... 10

*Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) ..... 11

*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006)..... 9, 20

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).. 18

*Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)..... 9, 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ..... 9

*Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407–08 (1992) ..... 18

*Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ..... 9

*CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999) ..... 11

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ..... 9

*Englewood Lending Inc. v. G & G Coachella Invs., LLC*, 651 F. Supp. 2d 1141, 1144 (C.D. Cal. 2009) ..... 19

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ..... 9, 11

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–50 (2000)..... 14

*Iqbal*, 556 U.S. at 678 ..... 14, 17

*Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990)..... 9, 10, 20

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ..... 17

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ..... 7

*Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888–89 (Del. Ch. 2009)..... 14

*Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)..... 17

*LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–37 (1997) ..... 17

*Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*, 815 F. Supp. 3d 891, 899–900 (C.D. Cal. 2025) ..... 18

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)..... 20

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ..... 9

*Nemec v. Shrader*, 991 A.2d 1120, 1125–26 (Del. 2010)........................................................ 14

*Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 38 (2024)........................................................ 18

*Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922–23 (2022)........................................ 18

*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)........................................ 16

*Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)................................................... 17

*Tri-Continent Int'l Corp. v. Paris Sav. & Loan Ass'n*, 12 Cal. App. 4th 1354, 1359 (1993)....... 12

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)........................................................ 7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003).................. 9, 16, 17, 18

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995)........................................................ 19

Statutes

Cal. Code Civ. Proc. § 1060.................................................................................................. 19

Cal. Lab. Code § 206(a).......................................................................................................... 19

Declaratory Judgment Act, 28 U.S.C. § 2201.......................................................................... 19

Fed. R. Civ. P. 15(a)(2)............................................................................................................. 9

Treatises

Restatement (Third) of Agency § 6.01 (Am. L. Inst. 2006)........................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Checkmate.com, Inc. ("Checkmate") seeks leave to file counterclaims it withdrew on July 29, 2026.[1] Checkmate has known the facts behind those claims since the fall of 2024. It pleaded them in April, briefed them in June, withdrew them in July, and then waited seventy-two days to seek leave. In the parties' Joint Rule 16(b)/26(f) Report, Checkmate agreed that any motion to amend the pleadings be heard by September 3, 2026. ECF 34 at 17, 20. It filed this motion on October 9, 2026 for a December 3, 2026 hearing. The motion offers no explanation for the delay; counsel's declaration addresses nothing but exhibits. And the pleading Checkmate proposes is not the one it withdrew. It adds a new contract theory, built on a Merger Agreement Checkmate signed in April 2024, that Checkmate has never pleaded before.

The amendment is also futile. Checkmate's own pleading attributes every representation it quotes to VoiceBite, Inc. ("VoiceBite") or to a VoiceBite co-founder. It alleges that Nessler made the Merger Agreement representations "in his capacity as CEO of VoiceBite," and that he signed the Assignment of IP and Other Assets "in his capacity as CEO of VoiceBite." ECF 44-1 at 45–47 (Countercl. ¶¶ 19–20). An officer who signs for a disclosed corporate principal is not a party to the contract. The one representation Checkmate attributes to Nessler personally concerns statements "concerning such Stockholder," not VoiceBite's code. *Id.* at 47 (¶ 21). The Intellectual Property Acknowledgement, as Checkmate describes it, contains no representation at all; it acknowledges a representation VoiceBite made. *Id.* at 48 (¶ 22). And the Merger Agreement makes indemnification under its Section 8—several, pro rata, and capped—"the sole and exclusive remedy" for every damages claim related to the transaction other than fraud. Checkmate pleads no claim under Section 8. Section 8.8 forecloses its contract, implied covenant, and negligent

---

[1]Under Section VIII.B of the Court's Civil Standing Order, this opposition was due fourteen days after the motion was filed, on October 23, 2026. It is filed four days late because counsel inadvertently calendared it under the default schedule of L.R. 7-9 (twenty-one days before the hearing) rather than the Standing Order. Nessler has concurrently filed an ex parte application requesting that the Court accept it as timely under Fed. R. Civ. P. 6(b)(1)(B). Thomas Decl. ¶¶ 4–6. The hearing is more than five weeks away, and Checkmate retains its full seven-day reply period measured from this filing. See *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258–62 (9th Cir. 2010).

misrepresentation counterclaims, and its fraud counterclaim still does not say what was false or why.

The tort and declaratory claims carry the defects they have carried since May. The Court should deny the motion.

## II. BACKGROUND

### A. The Transaction

Checkmate acquired VoiceBite on or about April 30, 2024 through an Agreement and Plan of Merger ("Merger Agreement") among Checkmate, a Checkmate merger subsidiary, VoiceBite, VoiceBite's five stockholders, and Nessler as representative of the stockholders. Countercl. ¶ 13.[2] Checkmate acquired all of VoiceBite's stock. Answer ¶ 4. Nessler then worked for Checkmate under an offer letter and a separate Bonus Agreement. Answer ¶ 9; Countercl. ¶ 24. Checkmate admits that Nessler remained employed for more than 90 days and that it has not paid the bonus. Answer ¶¶ 138, 141. Nessler's First Amended Complaint seeks that bonus, his severance and performance bonus, unpaid wages, and related relief. ECF 7.

The Merger Agreement, the Assignment of IP and Other Assets ("Assignment"), and the Intellectual Property Acknowledgement ("Acknowledgement") are of record. Checkmate filed them in its own action against another VoiceBite co-founder, *Checkmate.com, Inc. v. Vasan*, No. 1:25-cv-03181-JMF (S.D.N.Y.), and Nessler placed them before this Court with his reply on the motion to strike. ECF 38-1 (Request for Judicial Notice ("RJN")); ECF 38-3 (RJN Ex. A, Assignment); ECF 38-4 (RJN Ex. B, Acknowledgement); ECF 38-5 (RJN Ex. C, Merger Agreement). The proposed pleading quotes the Merger Agreement and sues on it, Countercl. ¶¶ 19, 21, 33, so the Court may consider it in assessing futility. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

The Merger Agreement is governed by Delaware law. RJN Ex. C § 9.7(a). Its Stockholder

---

[2]Exhibit A to the motion contains an answer and counterclaims with separately numbered paragraphs. "Answer ¶" refers to the answer (ECF 44-1 at 4–41); "Countercl. ¶" refers to the counterclaims (ECF 44-1 at 42–62). Page citations to docket entries are to the CM/ECF page number.

representations are in Section 4, its Company representations are in Section 5, and its indemnification provisions, including an exclusive-remedy clause, are in Section 8. *Id.* §§ 4, 5, 8.

**B. Checkmate's Prior Attempts to Plead Counterclaims**

Nessler filed this action on January 26, 2026 and his First Amended Complaint on February 13, 2026. ECF 1, 7. On March 27, 2026, the Court entered the parties' stipulation extending Checkmate's time to answer but not to assert counterclaims. ECF 22. Checkmate separately applied ex parte for more time to file counterclaims, ECF 20, and answered on April 7, 2026 without them, ECF 24. On April 28, 2026, while its ex parte application was pending, Checkmate filed an amended answer adding five counterclaims. ECF 28. On May 7, 2026, the Court denied the ex parte application, finding that Checkmate's predicament was "a crisis of Checkmate's own making." ECF 30 at 2. Nessler moved to strike or dismiss the counterclaims on May 19, 2026. ECF 33. Checkmate opposed. ECF 35. At the July 16, 2026 hearing, the Court indicated that it was inclined to strike the counterclaims because they had been asserted without leave after the stipulated order. ECF 41 at 3. On July 29, 2026, Checkmate withdrew them "without prejudice to [its] right to file a motion for leave to assert counterclaims pursuant to Federal Rules of Civil Procedure 13, 15, and 16," and stipulated that before filing any such motion it would conduct "a full and reasonable investigation into the factual and legal merits of any proposed counterclaims." *Id.* Nessler reserved the right to oppose any such motion on any ground. *Id.* at 3–4.

**C. The Parties' Proposed Schedule**

On May 28, 2026, the parties filed their Joint Rule 16(b)/26(f) Report. ECF 34. The parties agreed to a proposed schedule under which the last date to hear a motion to amend the pleadings or add parties would be September 3, 2026, fact discovery would close on May 5, 2027, and trial would begin on November 8, 2027. *Id.* at 17 ("The Parties' agree to the proposed dates appearing in the plaintiffs date column."), 20. On June 4, 2026, the Court took the scheduling conference under submission. ECF 36.

**D. This Motion**

Checkmate filed this motion on October 9, 2026. ECF 44. The proposed pleading is not the

one Checkmate withdrew. The redline shows that Checkmate added the Merger Agreement to its breach of contract claim, added allegations about the capacities in which Nessler signed it, and added a stockholder representation. ECF 44-2 at 45–48, 51, 53. The motion calls these changes "minor edits," ECF 44 at 10 n.1, and does not mention the Joint Report, the amendment date Checkmate agreed to, or the new contract theory. Counsel's declaration authenticates two exhibits and nothing else. ECF 44 at 19.

## III. LEGAL STANDARD

Leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court considers undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Delay is measured from when the moving party knew or should have known the facts and theories raised by the amendment. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990). The Court's discretion to deny leave "is particularly broad where plaintiff has previously amended." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Futility alone justifies denial. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). An amendment is futile if the proposed pleading would not survive a motion to dismiss. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). That test applies Rule 8 and *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and, for claims grounded in fraud, Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003).

## IV. ARGUMENT

### A. Checkmate's Delay Is Undue and Unexplained.

#### *1. Checkmate has known the facts and theories since the fall of 2024.*

By its own account, Checkmate discovered the facts underlying the counterclaims in the fall of 2024, sent notices of breach before this action was filed, and had the claims drafted by

March 2026. ECF 44 at 9, 12; Countercl. ¶¶ 4, 25–29, 64. It filed them on April 28, 2026. ECF 28. It briefed them in June. ECF 35. It withdrew them on July 29, 2026. ECF 41. It then filed nothing for seventy-two days.

The delay is longest as to the theory Checkmate now adds. The proposed pleading adds the Merger Agreement to the breach of contract claim, adds allegations about the capacities in which Nessler signed it, and adds a stockholder representation. Countercl. ¶¶ 13–15, 19–22, 33, 36–39; ECF 44-2 at 45–48, 51, 53. Checkmate signed the Merger Agreement in April 2024 and has possessed every fact underlying the new theory since. It did not plead that theory in April or June, and the motion does not acknowledge it, let alone explain its timing. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Jackson*, 902 F.2d at 1388 (quoting *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)).

### 2. *Checkmate's own proposed schedule would bar this motion.*

In the parties' Joint Rule 16(b)/26(f) Report, Checkmate agreed that any motion to amend the pleadings or add parties be heard no later than September 3, 2026. ECF 34 at 17, 20. Checkmate withdrew its counterclaims five weeks before that date and did not seek leave until five weeks after it. The motion is noticed for hearing thirteen weeks after the date Checkmate agreed to, and it does not mention the Joint Report. Its "good cause" section argues that Nessler has known about the counterclaims for months and that no discovery cutoff or trial date "stands in the way." ECF 44 at 16. Neither statement explains why Checkmate waited. Counsel's declaration authenticates two exhibits and nothing else. *Id.* at 19. The motion reports a conference on September 23, 2026 and an email on October 2, 2026, both after the agreed date. *Id.* at 4.

### 3. *The delay is Checkmate's own doing.*

Checkmate attributes "[e]very delay" to "Nessler's own position on the scope of his extension." ECF 44 at 13. The chronology says otherwise. Nessler's position on the March extension ended in a stipulated order that the Court entered. ECF 22; see *CDN Inc. v. Kapes*, 197

F.3d 1256, 1258 (9th Cir. 1999) (stipulations are enforced as entered). Checkmate filed counterclaims anyway, while its ex parte application for more time was pending, and the Court denied that application as "a crisis of Checkmate's own making." ECF 28; ECF 30 at 2. The Court then indicated at the July 16 hearing that it was inclined to strike the counterclaims, and Checkmate withdrew them. ECF 41 at 3. None of those events was Nessler's doing, and none stopped Checkmate from filing a motion for leave under Rule 15(a)(2) in April, in July, or at any time before the date it proposed. A party's objection to an unauthorized filing is not an obstacle to an authorized one.

***4. This is Checkmate's third version of the counterclaims.***

The Court's discretion to deny leave "is particularly broad where plaintiff has previously amended." *Ascon*, 866 F.2d at 1160; *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Checkmate pleaded these counterclaims in April. ECF 28. It revised them after Nessler's motion identified their defects, ECF 44 at 10 n.1, and now proposes a third version with a new contract theory. Checkmate also stipulated that, before filing any motion for leave, it would conduct "a full and reasonable investigation into the factual and legal merits of any proposed counterclaims." ECF 41 at 3. The proposed pleading still attributes to Nessler representations the Merger Agreement attributes to the Company, still omits the knowledge qualifier from the Assignment's representations, and still pleads damages claims the Merger Agreement's exclusive-remedy clause forecloses. See Parts IV.B–D. Leave for a third attempt is not required. *Foman*, 371 U.S. at 182.

**B. The Amendment Is Futile Because the Contract Counterclaims Cannot Be Asserted Against Nessler Individually.**

The Court should also deny leave because the first and second counterclaims are futile. They seek to hold Nessler personally liable for representations that, by Checkmate's own allegations, VoiceBite and a VoiceBite co-founder made.

***1. Checkmate alleges that the Merger Agreement representations were VoiceBite's.***

A breach of contract claim lies only against a party to the contract who undertook the obligation at issue. An agent who signs a contract for a disclosed principal is not a party to it. Restatement (Third) of Agency § 6.01 (Am. L. Inst. 2006); accord Cal. Civ. Code § 2343 (agent liable as a principal only in enumerated circumstances "and in no others"); *Tri-Continent Int'l Corp. v. Paris Sav. & Loan Ass'n*, 12 Cal. App. 4th 1354, 1359 (1993).

Checkmate pleads that Nessler made the Merger Agreement representations "in his capacity as CEO of VoiceBite." Countercl. ¶ 19. The Merger Agreement confirms it. Every representation Checkmate quotes is in Section 5, which begins: "The Company hereby represents and warrants to Purchaser and Merger Sub." RJN Ex. C § 5. The ownership-or-right-to-use representation is Section 5.9(c); the source-code representation is Section 5.9(h); the non-infringement representation is Section 5.9(f); and the "prospective purchaser" and no-omission representations are Section 5.19. *Id.* §§ 5.9(c), (f), (h), 5.19. Each is a statement about "the Company." Checkmate alleges that Nessler "knew they were false when he was making them himself or on behalf of VoiceBite," Countercl. ¶ 23, and that the acquisition contradicted "the representations made by Plaintiff on behalf of VoiceBite," *id.* ¶ 30. Those are VoiceBite's representations. Nessler's signature as CEO bound VoiceBite. It did not make him a guarantor of VoiceBite's warranties.

Nessler also signed the Merger Agreement as a Stockholder and as Holder Representative. Countercl. ¶ 14. In those capacities he is bound only by the obligations the Agreement assigns to them. The Stockholders' representations, in Section 4, concern each Stockholder's own capacity, authority, title to shares, conflicts, and proceedings. RJN Ex. C §§ 4.1–4.8. None concerns the Company's intellectual property. The only one Checkmate pleads, Section 4.9, warrants that "no statement concerning such Stockholder" furnished by him "contains any untrue statement of material fact." Countercl. ¶ 21; RJN Ex. C § 4.9. Checkmate does not allege that any statement about Nessler was false; its theory is that statements about VoiceBite's code were false. Section 4.9 does not reach them. And "in no event will the Holder Representative have any obligation to indemnify any Person hereunder solely in its capacity as the Holder Representative." RJN Ex. C §

1.1 ("Indemnifying Party").

The Agreement does address a Stockholder's exposure for a breach of the Company's representations. It is not a claim that the Stockholder breached them. It is the several, pro rata indemnification obligation in Section 8.1(a), subject to the procedure, sources of recovery, survival periods, and caps in Sections 8.3 through 8.5. RJN Ex. C §§ 8.1(a), 8.3–8.5. Checkmate does not plead that claim. See Part IV.C.

***2. The Acknowledgement contains no representation and no covenant.***

Checkmate describes the Acknowledgement as a document in which Nessler "acknowledged Section 5.9(f) of the Merger Agreement," which stated that "[n]either the Company . . . nor any of its current or proposed products or services have infringed upon . . . any Intellectual Property rights of any Person." Countercl. ¶ 22. That description is accurate. The Acknowledgement acknowledges that VoiceBite made a representation. RJN Ex. B. It does not repeat that representation in Nessler's name, and it contains no promise by Nessler at all. Acknowledging that one's company has made a representation is neither making the representation nor warranting its truth.

Paragraph 34 characterizes the Acknowledgement as an agreement "pursuant to which Plaintiff was prevented from bringing intellectual property owned by or subject to claims by third parties to Checkmate." Countercl. ¶ 34. Paragraph 22 identifies no such term, and the document contains none. RJN Ex. B. A pleading's characterization of a contract yields to the contract's terms. A party cannot breach a covenant the contract does not contain.

***3. The Assignment statements are a co-founder's, made to VoiceBite.***

Checkmate pleads that the Assignment was "signed by Nessler in his capacity as CEO of VoiceBite" and that its operative statements were that "one of Nessler's VoiceBite co-founders" was the "owner, inventor and/or author" of the assigned property and had provided it to VoiceBite. Countercl. ¶ 20. On Checkmate's own allegations, the Assignment representations were made by

a co-founder, to VoiceBite, and Nessler signed only to accept them for VoiceBite. Nessler cannot be liable for breaching a co-founder's warranty, and the Company's countersignature creates no obligation running from Nessler to anyone.

Checkmate's standing to enforce the Assignment is likewise unpleaded. The Assignment's parties are the assignor and "the Company," and its representations run to the Company. RJN Ex. A (ECF 38-3) § 3. Checkmate alleges only that it is VoiceBite's "assignee and third party beneficiary." Countercl. ¶ 35. It identifies no assignment of VoiceBite's rights and no language conferring third-party-beneficiary status. A label is not a fact. *Iqbal*, 556 U.S. at 678. The Assignment's representations are also expressly limited to "the best of Assignor's knowledge," a qualifier the proposed pleading omits. RJN Ex. A § 3.

#### ***4. The implied covenant claim falls with the contracts.***

The implied covenant is a term of the contract between the contracting parties. It cannot create obligations the contract does not contain or override the terms the parties chose. *Nemec v. Shrader*, 991 A.2d 1120, 1125–26 (Del. 2010); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888–89 (Del. Ch. 2009) (covenant "cannot be invoked to override the express terms of the contract"; "[g]eneral allegations of bad faith conduct are not sufficient"); accord *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–50 (2000); *Smith v. City & County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990). The second counterclaim invokes the same three agreements, the same representations, and the same damages as the first. Countercl. ¶¶ 42–44. If Nessler did not personally make the representations, no covenant runs from him to Checkmate concerning them. If he did, the claim duplicates the first. Either way it is a damages claim "related to this Agreement" that is not "grounded in Fraud," and Section 8.8 forecloses it. RJN Ex. C § 8.8.

### C. The Merger Agreement Makes Section 8 Indemnification the Exclusive Remedy for Non-Fraud Claims, and Checkmate Pleads No Such Claim.

Section 8.8 of the Merger Agreement provides that, "excluding actions grounded in Fraud, from and after the Closing Date, the indemnities provided in this Section 8 will constitute the sole

and exclusive remedy of any Indemnified Party for damages arising out of, resulting from or incurred in connection with any claims related to this Agreement or arising out of the transactions contemplated hereby." RJN Ex. C § 8.8. Checkmate is an Indemnified Party. *Id.* § 1.1 ("Indemnified Party," "Purchaser Indemnified Parties"). "Fraud" means "common law fraud under the laws of the State of Delaware." *Id.* § 1.1. Delaware enforces such provisions as written. *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1035–36, 1064 (Del. Ch. 2006) (enforcing an acquisition agreement's exclusive-remedy and indemnity-cap provisions against every claim except one based on the seller's own knowing misrepresentation; a buyer "may not escape the contractual limitations on liability by attempting to show that the Seller acted in a reckless, grossly negligent, or negligent manner").

The remedy Section 8 provides is specific. Each Pre-Closing Holder indemnifies "severally . . . but not jointly," in accordance with his allocation on the Closing Spreadsheet. RJN Ex. C § 8.1. Recovery is "pro rata based on each such Pre-Closing Holder's Pro Rata Share," and in a prescribed order: forfeiture of the "Final Payment Amounts" under the holder's Bonus Agreement, surrender of Closing Shares for eighteen months after the Closing, and only then monetary payment. *Id.* § 8.3(d). A Direct Claim is asserted by a written Notice of Claim to the Holder Representative. *Id.* § 8.3(c). Claims for breach of non-fundamental representations, including Section 5.19, had to be asserted within eighteen months of the April 30, 2024 Closing. *Id.* § 8.4. And absent Fraud, no holder is liable under Section 8.1(a) "for amounts in excess of the Merger Consideration received by such Indemnifying Pre-Closing Holder (based on the Purchaser Share Value) plus the Final Payment Amounts under such Indemnifying Pre-Closing Holder's Bonus Agreement." *Id.* § 8.5(a).

The first counterclaim is not that claim. It does not invoke Section 8. It does not allege a Notice of Claim, a Pro Rata Share, or compliance with the survival period. It alleges that Nessler personally made and breached the Company's representations, and it seeks unapportioned "direct, consequential, and incidental losses and lost profits" against him alone, including the return of his merger consideration. Countercl. ¶¶ 36–40. It also seeks punitive damages and attorneys' fees.

Prayer ¶¶ 3–4. Section 8.8 forecloses a damages claim of that kind. The second and fourth counterclaims are likewise damages claims "related to this Agreement" and "arising out of the transactions contemplated hereby" that are not "grounded in Fraud." Negligence is not Delaware common law fraud, which requires a representation made with knowledge of its falsity or reckless indifference to its truth. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); see *Abry*, 891 A.2d at 1064. Section 8.8 forecloses those claims too. The cap and the exclusive-remedy clause yield only to Fraud, which is why Checkmate pleads fraud and why it must plead it with particularity. It has not. See Part IV.D.

### D. The Fraud and Negligent Misrepresentation Counterclaims Remain Futile.

#### *1. The quoted representations do not say what Checkmate says they say.*

Checkmate's fraud theory is that Nessler represented VoiceBite to be "the original author and exclusive owner" of its code. Countercl. ¶¶ 46, 55; see *id.* ¶ 1. No quoted representation says that. The Merger Agreement representation is that VoiceBite "owned or had valid and enforceable right to use" its intellectual property. *Id.* ¶ 46. That is disjunctive. A company that licenses or has been assigned code it did not write makes that representation truthfully. Section 5.9(f) concerns infringement of third parties' rights, not authorship. *Id.* ¶ 22. The Assignment statements concern a co-founder's assigned property and are qualified to "the best of Assignor's knowledge." *Id.* ¶ 20; RJN Ex. A (ECF 38-3) § 3. Rule 9(b) requires Checkmate to identify the statement and explain "why it is false." *Vess*, 317 F.3d at 1106. It cannot do so by substituting "exclusive ownership and authorship" for the words actually used.

#### *2. Checkmate does not plead falsity, knowledge, or a misrepresentation made to it.*

Checkmate's falsity allegations are that the code contained a 2018 copyright string, references to "Cyborg," copyright headers that appeared to have been changed, and references to Vasan Varadarajan, who "developed" the property. Countercl. ¶¶ 25–29. None of those facts shows

that VoiceBite lacked ownership of, or a valid right to use, the code. Checkmate does not allege that CyborgOps, Presto Automation, Varadarajan, or anyone else owns the code, has claimed it, or has asserted infringement. Development is not ownership. Checkmate's own pleading alleges that the Assignment conveyed to VoiceBite "all worldwide . . . copyrights" in the technology. *Id.* ¶ 20. The conclusion that "VoiceBite did not have the rights it claimed to have," *id.* ¶ 30, is a conclusion. *Iqbal*, 556 U.S. at 678–79. Rule 9(b) requires Checkmate to connect each fact to the representation it falsified. *Vess*, 317 F.3d at 1106.

Knowledge is pleaded no better. The only representations Nessler personally made, in the Assignment, are qualified to "the best of Assignor's knowledge," RJN Ex. A § 3, so falsity and scienter merge: Checkmate must plead what Nessler actually knew on April 30, 2024. Its strongest fact is a January 23, 2025 written statement by an unnamed "colleague" that Varadarajan "had developed the property." Countercl. ¶ 29. That statement postdates the closing by nine months, is attributed to someone else, and says nothing about ownership. Nor does the pleading say who made which statement in which capacity. It alleges that Nessler acted "on his own behalf and on behalf of VoiceBite," *id.* ¶ 46, and attributes to "Plaintiff" representations the documents show were VoiceBite's. Rule 9(b) does not permit that lumping. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). And a misrepresentation must be made to the claimant or intended to reach it. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). The Assignment representations were made "to the Company." RJN Ex. A § 3.

The oral misrepresentations fare worse. Checkmate alleges "oral and written misrepresentations" made "throughout the Transaction." Countercl. ¶ 46. It identifies no speaker, no listener, no date, no place, and no words. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("the who, what, when, where, and how") (citation omitted). Checkmate's own earlier brief described its claims as resting on "affirmative written representations" in the executed transaction documents, "not" on "silence alone." ECF 35 at [17]. The concealment theory requires a duty to disclose, *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–37 (1997), and Checkmate pleads none beyond the conclusion that Nessler "had a duty to disclose that VoiceBite's code was

not VoiceBite's intellectual property," Countercl. ¶ 51, which assumes the unpleaded rights defect.

***3. Negligent misrepresentation is not pleaded and is barred twice over.***

Negligent misrepresentation requires a positive assertion of fact made without reasonable grounds for believing it true. *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407–08 (1992); *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) ("a positive assertion is required; an omission or an implied assertion or representation is not sufficient"). Paragraph 59's theory that Nessler "negligently failed to disclose" is therefore not a claim. The affirmative-statement theory repeats the fraud claim's deficiencies and is subject to Rule 9(b). *Vess*, 317 F.3d at 1103–05. It also contradicts itself: Checkmate pleads that Nessler "had personal, first-hand knowledge that the above representations were false." Countercl. ¶ 56. That is an allegation of fraud, not negligence.

The claim is also barred twice over. Negligent misrepresentation is not "Fraud" under the Merger Agreement, so it is a damages claim arising out of the transaction that Section 8.8 forecloses. RJN Ex. C §§ 1.1, 8.8; see Part IV.C. And the economic loss rule bars negligence-based recovery of purely economic losses arising from a contractual relationship, including losses from "negligence in the performance or negotiation of a contract between the parties." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922–23 (2022) (citation omitted); *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 38 (2024); *Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*, 815 F. Supp. 3d 891, 899–900 (C.D. Cal. 2025) (dismissing negligent misrepresentation claim seeking purely economic loss within the contemplation of the parties' agreement). Checkmate's alleged loss—that it "did not purchase the valuable entity that it had been led to believe it was purchasing," Countercl. ¶ 30—is the expectancy the Merger Agreement's representations, warranties, and indemnities allocate. The rule exists so that "parties [can] make dependable allocations of financial risk without fear that tort law will be used to undo them later." *Sheen*, 12 Cal. 5th at 923 (citation omitted).

***4. Damages are not pleaded.***

Checkmate alleges that it issued stock to Nessler and faces "exposure to claims by third parties." Countercl. ¶¶ 52, 60. Paying agreed consideration is not an injury. Exposure to claims no one has asserted is not an injury. Checkmate does not allege that it lost the use of the code, that any third party has demanded anything, or that it has paid anything to anyone.

**E. The Declaratory Relief Counterclaim Is Futile.**

The fifth counterclaim seeks a declaration that Nessler "is disentitled to further compensation under the parties' agreements" and "is required to indemnify Defendant for losses incurred as a result of the foregoing conduct." Countercl. ¶ 65. It is pleaded under Cal. Code Civ. Proc. § 1060, which does not apply in federal court; the Declaratory Judgment Act, 28 U.S.C. § 2201, governs. *Englewood Lending Inc. v. G & G Coachella Invs., LLC*, 651 F. Supp. 2d 1141, 1144 (C.D. Cal. 2009).

The first half is the mirror image of Nessler's claims and of Checkmate's affirmative defenses of breach, failure of conditions precedent, offset, fraudulent inducement, and payment. Answer, Twenty-Second, Twenty-Fifth, Twenty-Seventh, Thirty-Third, and Forty-Third Affirmative Defenses. A declaratory counterclaim that restates the defendant's defenses serves no purpose, and the Court has discretion to decline it. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–88 (1995); *Englewood*, 651 F. Supp. 2d at 1145 (dismissing declaratory counterclaim that "overlaps with the relief sought" in the complaint and the affirmative defenses; the counterclaimant "do[es] not live in fear of a potential suit" but is "already obliged to defend against one"). It also seeks a result the law forbids. An employer must pay undisputed wages notwithstanding a dispute over other amounts, Cal. Lab. Code § 206(a), and may not recover wages already paid, *id.* § 221. Checkmate identifies no term of the offer letter or the Bonus Agreement that conditions compensation on the truth of VoiceBite's merger representations. The Merger Agreement identifies the only compensation that may be applied to an indemnification claim: "forfeiture of any right to receive Final Payment Amounts (as defined in the Bonus Agreement)." RJN Ex. C § 8.3(d)(1). It does not reach the Initial Payment under the Bonus Agreement, the severance or performance bonus under the offer letter, or wages. The declaration Checkmate seeks contradicts

the agreement it invokes.

The second half seeks a declaration of indemnity for unspecified losses "incurred" and, in the motion's description, losses Nessler "may in the future cause." ECF 44 at 11. Checkmate identifies no indemnification provision, no party to it, no scope, and no loss. A declaratory judgment requires a controversy that is "definite and concrete," not hypothetical. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). If Section 8 of the Merger Agreement is the source, the obligation is several, pro rata, capped absent Fraud, and subject to the procedure and survival periods described in Part IV.C. Checkmate pleads none of those terms and seeks a declaration inconsistent with all of them.

### F. Checkmate's Remaining Arguments Do Not Warrant Leave.

**Notice is not an explanation.** Checkmate argues that Nessler has known about the counterclaims since March. ECF 44 at 14. Checkmate has known about them at least as long. The question is why Checkmate waited, and the motion does not answer it. *AmerisourceBergen*, 465 F.3d at 953.

**The counterclaims would prejudice Nessler.** The parties' agreed schedule closes fact discovery on May 5, 2027 and sets trial for November 8, 2027. ECF 34 at 20. The counterclaims would add to this employment case the provenance of VoiceBite's code, a 2022 asset sale by CyborgOps, a non-party's authorship, acquisition valuation, lost profits, and punitive damages against an individual. Countercl. ¶¶ 25–29, 40, 52; Prayer ¶¶ 1, 3. An individual employee defending acquisition-level claims on that schedule is prejudiced, whatever he knew of the accusations before. See *Jackson*, 902 F.2d at 1387 (prejudice where a new theory would require continued litigation and additional discovery).

**The compulsory-counterclaim argument is self-inflicted.** Checkmate argues that denying leave "risks barring them permanently." ECF 44 at 15. If the counterclaims are compulsory, Rule 13(a) required Checkmate to plead them with its answer in April. Checkmate stipulated not to, pleaded them without leave, lost its ex parte application, withdrew them, and let the date it agreed to for hearing amendment motions pass. *Pochiro* concerns the preclusive effect

of an omitted counterclaim in a later action, 827 F.2d at 1253; it does not excuse delay in this one. The risk Checkmate describes is the consequence of its own choices.

**The motion does not comply with the Court's Civil Standing Order.** Section IX.B requires a motion to amend to state the effect of the amendment and to "identify the pages, line numbers, and wording of any proposed change or addition of material." The motion does neither. It calls the changes "minor edits," ECF 44 at 10 n.1, and leaves the Court to find in a sixty-page redline a new contract theory and a new set of capacity allegations. ECF 44-2 at 45–48, 51, 53.

**Checkmate's incorporation of its earlier opposition is improper.** Checkmate "incorporates by reference" its June opposition, ECF 35, as its showing that the counterclaims are not futile. ECF 44 at 16. The limits of L.R. 11-6.1 and Section VIII.C of the Civil Standing Order cannot be evaded by incorporation, and the Court should disregard arguments not made in the motion. In any event, ECF 35 defended a pleading that did not assert breach of the Merger Agreement and did not contain paragraphs 14, 15, or 19 through 22. It says nothing about the theory Checkmate now proposes.

### G. At a Minimum, the Court Should Not Deem Exhibit A Filed.

The proposed order would "accept[] exhibit A" as Checkmate's operative pleading upon entry. ECF 44-3 at 2. If the Court grants any part of the motion, it should limit leave to the claims it finds adequately pleaded and require Checkmate to file a conforming pleading within fourteen days, with Nessler's response due under Rule 15(a)(3). Exhibit A still recites that it is filed "[p]ursuant to FRCP 15(a)(1)(A)," ECF 44-1 at 4, and pleads negligent misrepresentation "in the alternative to its fourth claim for relief." Countercl. ¶ 53.

## V. CONCLUSION

Checkmate has not explained its delay, and the pleading it proposes is futile. The proposed counterclaims seek to hold Nessler personally liable for VoiceBite's representations, seek damages the Merger Agreement's exclusive-remedy clause forecloses, plead no facts showing that any representation was false, and seek declarations the law and the Agreement do not permit. Nessler respectfully requests that the Court deny the motion.

DATED: October 27, 2026

THOMAS WHITELAW & KOLEGRAFF LLP

By: */s/ Grant J. Thomas*

JOSEPH E. THOMAS
GRANT J. THOMAS
Attorneys for Plaintiff Robert Nessler

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send a Notice of Electronic Filing ("NEF") to all counsel of record who are registered CM/ECF users.

I further certify that all parties appearing in this action are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) and the applicable Local Rules.

Dated: October 27, 2026

*/s/ Grant J. Thomas*
Grant J. Thomas