MANNING CURTIS BRADSHAW
& BEDNAR PLLC
Mitch M. Longson, *Pro Hac Vice*
mlongson@mc2b.com
201 S. Main Street, Suite 750
Salt Lake City, Utah 84111
T. 801.303.0036
F. 801.364.5678

BARRIENTOS PC
J. Alejandro Barrientos, SBN 346676
Alejandro@bts.law
145 S. Fairfax Avenue, Suite 200-152
Los Angeles, CA 90036
T. 626.551.4564
F. 626.427.6753

Attorneys for Defendants Checkmate.com, Inc. and Vishal Agarwal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

ROBERT NESSLER, an individual,

Plaintiff,

v.

CHECKMATE.COM, INC., a Delaware Corporation; VISHAL AGARWAL; an individual; DOES 1-10; inclusive.

Defendant.

***Caption continued on next page***

Case No. 2:26-cv-00767-MEMF-AS

CHECKMATE.COM, INC.'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER AND COUNTERCLAIMS; DECLARATION OF COUNSEL; CERTIFICATION OF COUNSEL

Hearing Date: Vacated by Court (previously Dec. 3, 2026)
Complaint Filed: Jan. 26, 2026
Trial Date: Not Set

CHECKMATE.COM, INC.,

Proposed Counterclaim-Plaintiff,

v.

ROBERT NESSLER,

Proposed Counterclaim-Defendant.

# TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. Rule 15's liberal amendment standard, rather than Rule 16's stricter standard, applies. .......... 1

II. Nessler has not shown prejudice—the "touchstone" of leave-to-amend analysis under FRCP 15(a)(2). .......... 2

III. Checkmate did not unduly delay. .......... 4

IV. Denying leave to amend would prejudice Checkmate and waste judicial resources. .......... 6

V. The proposed counterclaims are not futile. .......... 7

A. Legal standard. .......... 7

B. Nessler is a proper defendant on the contract-based counterclaims who made representations to induce Checkmate into entering the Merger Agreement. .......... 7

C. The implied covenant claim is not futile. .......... 9

D. Checkmate pleads fraud with particularity, including the who, what, when, where, and how of Nessler's fraud. .......... 9

E. Checkmate adequately pleaded negligent misrepresentation. .......... 12

F. Section 8.8 of the Merger Agreement does not prevent Checkmate from pursuing claims "grounded in Fraud," including those asserted in the proposed counterclaims. .......... 13

G. Checkmate has adequately pleaded damages. .......... 15

VI. Nessler's procedural objections do not warrant denial of leave to amend. .......... 16

CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**Case** **Page(s)**

*Abry Partners V, L.P. v. F & W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006)....................14

*Ascon Properties, Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) ....................5

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370, 834 P.2d 745 (1992) ....................12

*Bock v. Hansen*,
225 Cal. App. 4th 215 (2014) ....................9

*Cobalt Operating, LLC v. James Crystal Enterprises, LLC*,
No. CIV.A. 714-VCS, 2007 WL 2142926 (Del. Ch. July 20, 2007)................15

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987)....................4, 6

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................2

*GEOMC Co. v. Calmare Therapeutics Inc.*,
918 F.3d 92 (2d Cir. 2019)....................5, 6

*Hip Hop Beverage Corp. v. RIC Representcoes Importacao e Comercio Ltda.*,
220 F.R.D. 614 (C.D. Cal. 2003) ....................3–4

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ....................4

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992)....................1

*Kolker v. Hurwitz*,
No. CIV. 09-1895 JP, 2011 WL 4948865 (D.P.R. Oct. 18, 2011) ................. 5, 6

*Lazar v. Superior Court*,
12 Cal. 4th 631 (1996) ................................................................ 9

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ......................................................... 11

*Malheur Forest Fairness Coalition v. Iron Triangle, LLC*,
164 F.4th 710 (9th Cir. 2026) ....................................................... 7

*Matter of Enstar Corp.*,
593 A.2d 543 (Del. Ch. 1991) ....................................................... 11

*McKinley v. Kaplan*,
177 F.3d 1253 (11th Cir. 1999) .................................................... 1–2

*Persson v. Smart Inventions, Inc.*,
125 Cal. App. 4th 1141 (2005) ..................................................... 15

*Pochiro v. Prudential Insurance Co. of America*,
827 F.2d 1246 (9th Cir. 1987) ....................................................... 6

*Prairie Capital III, L.P. v. Double E Holding Corp.*,
132 A.3d 35 (Del. Ch. 2015) ......................................................... 10

*Robinson Helicopter Co. v. Dana Corp.*,
34 Cal. 4th 979 (2004) ................................................................ 13, 15

*Southern Construction Co. v. Pickard*,
371 U.S. 57 (1962) ..................................................................... 6

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ......................................................... 9

*Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*,
753 F. Supp. 3d 966 (C.D. Cal. 2024) ............................................ 12

*United States ex rel. Relator, LLC v. Erskine*,
182 F.4th 785 (9th Cir. 2026) .......................................................................7
*United States v. Unified Industries, Inc.*,
929 F. Supp. 947 (E.D. Va. 1996) ..............................................................14
*Vera v. REL-BC, LLC*,
66 Cal. App. 5th 57 (2021) ........................................................................13
*VGS, Inc. v. Castiel*,
No. C.A. 17995, 2003 WL 723285 (Del. Ch. Feb. 28, 2003)..........................11
*Vichi v. Koninklijke Philips Electronics, N.V.*,
85 A.3d 725 (Del. Ch. 2014)......................................................................13

**RULES**

Fed. R. Civ. P. 9(b) ....................................................................................9
Fed. R. Civ. P. 13(a)......................................................................................6
Fed. R. Civ. P. 15(a)........................................................................ 1–2, 4–6
Fed. R. Civ. P. 16 ......................................................................................1–2

**RELPY IN SUPPORT OF MOTION FOR LEAVE TO**
**FILE SECOND AMENDED ANSWER AND COUNTERCLAIMS**

## INTRODUCTION

Checkmate.com, Inc. ("Checkmate") moved for leave to file its Second Amended Answer and Counterclaims against Plaintiff Robert Nessler ("Nessler"), to assert five counterclaims previously raised and withdrawn following procedural disputes. Nessler opposes the motion, arguing, *inter alia*, that Checkmate has unduly delayed, that Nessler will suffer prejudice if leave is granted, and Checkmate's proposed claims are futile. These arguments are meritless for the reasons explained below.[1]

## ARGUMENT

### I. Rule 15's liberal amendment standard, rather than Rule 16's stricter standard, applies.

Nessler appears to concede that Rule 15's liberal amendment standard applies at one point in his opposition. (Opp. at 9.) But he later relies on the parties' Joint Rule 26 Report, which proposed a deadline to add claims. (Opp. at 10.) Such reliance is misplaced. The Court has not entered a Rule 16 scheduling order. And Rule 16 only applies after a court has "filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Absent such an order, the motion is governed by Rule 15(a)(2) alone. *See McKinley v. Kaplan*, 177 F.3d 1253, 1257 (11th Cir. 1999) ("However, the alleged joint scheduling order apparently never was entered and therefore never became binding as necessary to trigger the operation of Rule 16(b) of the Federal Rules of Civil Procedure."). Nessler cites no contrary authority.

[1] Citations to documents filed on the Court's CM/ECF system refer to page numbers generated by that system.

And even putting aside the legal relevance of Joint Rule 26 Report, Nessler's reliance on it makes little sense as a factual matter. Under Judge Frimpong's Civil Standing Order, a motion "must be filed no later than forty-two (42) days prior to the hearing date," and civil motions are heard on Thursdays. Civil Standing Order § VIII.B (*see* Dkt. 17). To comply with this schedule, a motion for leave to assert counterclaims by September 3rd (the parties' previously proposed deadline to add claims) must have been filed by July 23, 2026. However, the stipulation between the parties that led to the instant motion was not accepted by the Court until August 12, 2026. (Dkt. 43).

## II. Nessler has not shown prejudice—the "touchstone" of leave-to-amend analysis under FRCP 15(a)(2).

Nessler does not dispute that he bears the burden of showing prejudice or that that prejudice is the "touchstone of the inquiry under rule 15(a)." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). He nonetheless dedicates only a few sentences to the issue and fails to carry his burden. (Opp. at 20).

***First***. Nessler is incorrect that the proposed counterclaims would "add" to this case. (Opp. at 20). Checkmate's proposed counterclaims are already at issue because Checkmate timely asserted affirmative defenses that factually and legally overlap. *See* Dkt. 28, at 29 (affirmative defense of unclean hands), 33 (affirmative defense of breach of contract by plaintiff), 39 (affirmative defense of fraudulent inducement). Nessler claims that such affirmative defenses are a "mirror image" of Checkmate's fifth proposed counterclaim. (Opp. at 20.) Notably, moreover, Nessler's own first amended complaint renders the same facts underlying Checkmate's proposed counterclaims relevant, including by its discussion of the "merger" of VoiceBite and Checkmate, *see, e.g.*, Dkt. 11, ¶¶55, 57, 60, 62, 98, 136, 138, 162, and its admission

that Nessler failed to "mak[e] disclosures relating to certain aspects of [VoiceBite's] legacy code system," *id.*, ¶56.

***Second***. Nessler cites the (proposed but not entered) discovery deadline and trial date to argue that he will be prejudiced by Checkmate's assertion of counterclaims.

This argument has no merit, especially because the parties have already exchanged discovery requests relevant to Checkmate's proposed counterclaims. On or about July 29, Checkmate served interrogatories on Nessler, including one instructing Nessler to "IDENTIFY all legacy code issues that YOU contend should have been disclosed in connection with the CHECKMATE/VOICEBITE TRANSACTION." Decl. of Counsel, ¶2. On or about the same day, it served requests for production, including a request for "All DOCUMENTS concerning legacy code issues in the VoiceBite AI solution, including any disclosures or non-disclosures relating to such issues." Decl. of Counsel, ¶ 3. Nessler has already produced approximately 1,400 documents in response to Checkmate's first round of discovery requests. Decl. of Counsel, ¶4.

For his part, Nessler similarly served discovery requests on Checkmate that are relevant to Checkmate's proposed counterclaims, including requests related to "the trade secret and intellectual property acknowledgements dated on or about April 22, 2024 that CHECKMATE required PLAINTIFF, Arjun Vasan, and Christopher Lam to sign before closing." Decl. of Counsel, ¶5.

In sum, the parties are already engaged in discovery into facts that underly both Checkmate's already-existing affirmative defenses and its proposed counterclaims. There is no reason the parties cannot complete discovery on whatever schedule is ultimately ordered by the Court. *See Hip Hop Beverage Corp. v. RIC Representcoes Importacao e Comercio Ltda.*, 220 F.R.D. 614, 622 (C.D. Cal. 2003)

(no undue prejudice because the discovery cutoff was still two months away and the proposed claims were "substantially related to the issues" already in the case).

***Third.*** Nessler argues that "[n]otice is not an explanation." (Opp. at 20.) But whether Nessler had notice of potential claims is directly relevant to the factor that matters most—prejudice to the party opposing leave to amend. Indeed, as discussed above, both Checkmate and Nessler have already served discovery requests regarding the facts underlying Checkmate's proposed counterclaims.

***Finally.*** Nessler misplaces his reliance on *Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990). There, the proposed new claims "advance[d] different legal theories and require[d] proof of different facts," and amendment would have forced re-litigation of a related insurance action. 902 F.2d at 1387–88. Moreover, the parties in *Jackson* informed the court that they intended to file amended claims in March of 1987 but did not do so until May of 1988. *Id.*, 1388. Here, however, the counterclaims rest on facts that plaintiff himself put at issue in his operative complaint, that were further put at issue in Checkmate's timely filed affirmative defenses, and are already the subject of discovery, as explained above. And there are no prior related actions that would need to be relitigated because of Checkmate's proposed counterclaims.

## III. Checkmate did not unduly delay.

Nessler's claims that Checkmate unduly delayed lack merit. And, in any case, "delay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

***First.*** Nessler ignores his role in the procedural history that led to the current dispute, including his counsel's threat of sanctions when the parties discussed potential assertion of counterclaims in Checkmate's initial responsive pleading and his counsel's refusal to stipulate to additional time for Checkmate to file

counterclaims so it could consider the grounds for the sanctions threat. *See* Mot. at 9-11 (explaining procedural history). This is simply not a case where Checkmate did nothing to assert counterclaims in its initial pleading. It instead sought to fully consider plaintiff counsel's threat of sanctions and then proceed based on its good faith interpretation of FRCP 15 as giving Checkmate the right to amend its responsive pleading by adding counterclaims. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100 (2d Cir. 2019) ("As to procedure for presenting a new counterclaim, most attempts to amend an answer to include a new counterclaim require permission of the court or consent of the parties. See Fed. R. Civ. P. 15(a)(2). The only exceptions occur when a counterclaimant seeks to amend its answer within 21 days after serving its original answer, see Fed. R. Civ. P. 15(a)(1)(A) . . . ."); *Kolker v. Hurwitz*, No. CIV. 09-1895 JP, 2011 WL 4948865, at *3 (D.P.R. Oct. 18, 2011) ("Here, Defendants amended their answer within the 21 day period allotted by the rules. Also, Defendants had not previously amended their responsive pleading. As such, Defendants were entitled to amend their answer as a matter of right and include the counterclaims.").

***Second.*** Nessler contends that the delay is "longest as to the theory Checkmate now adds," namely breach of the Merger Agreement. (Opp. at 10.). But the relevance of the Merger Agreement is not new. As discussed above, the Merger Agreement is relevant to the allegations of Nessler's operative complaint and Checkmate's timely filed affirmative defenses.

***Finally.*** Nessler invokes the Court's "particularly broad" discretion to deny leave to amend where a party "has previously amended." (Opp. at 11 (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).) Unlike the circumstances of Nessler's cited case, however, Checkmate has not "already been granted leave to amend." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160

(9th Cir. 1989). And, unlike *Ascon*, no Court has found Checkmate's counterclaims to be deficient. *See id.* 1160-61. Checkmate's prior counterclaims were withdrawn on procedural grounds before any ruling on the merits. (Dkt. 41, 43.) Denial of leave to amend would therefore contradict "the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citation and quotations omitted).

## IV. Denying leave to amend would prejudice Checkmate and waste judicial resources.

Denying leave to amend would prejudice Checkmate. Because Checkmate's counterclaims may be compulsory, denying leave risks barring them permanently. *See Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1253–54 (9th Cir. 1987). Nessler argues that such risk is "self-inflicted" and that *Pochiro* "does not excuse delay." (Opp. at 20–21.) That misses the point. The relevance of *Pochiro* is not to excuse delay but to show that potential prejudice to Checkmate is greater than any potential prejudice to Nessler. Moreover, denying leave could extinguish Checkmate's claims or force a second lawsuit. That is "the precise multiplicity of proceedings that the Federal Rules are intended to avoid." (Dkt. 44 at 15 (citing *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962)).).[2]

---

[2] Nessler also argues that Rule 13(a) "required Checkmate to plead them [i.e., its counterclaims] with its answer in April." Opp. at 20. But Checkmate had the right to amend its initial responsive pleading, including by adding counterclaims, within 21 days of serving that pleading under FRCP 15. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100 (2d Cir. 2019); *Kolker v. Hurwitz*, No. CIV. 09-1895 JP, 2011 WL 4948865, at *3 (D.P.R. Oct. 18, 2011).

## V. The proposed counterclaims are not futile.

Checkmate's proposed counterclaims are not futile for the following reasons.[3]

### A. Legal standard.

"A district court may deny leave to amend in its discretion when amendment would be futile. Under futility analysis, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 738 (9th Cir. 2026) (cleaned up). Under these rules, a finding of futility is improper even if a pleading fails to state a claim when the party might be able to allege additional facts in support of its claims. *See United States ex rel. Relator, LLC v. Erskine*, 182 F.4th 785, 796 (9th Cir. 2026) (holding district court abuse discretion in denying leave to amend based on futility because the party "might be able to allege additional facts in support of its theory").

### B. Nessler is a proper defendant on the contract-based counterclaims who made representations to induce Checkmate into entering the Merger Agreement.

Regarding Checkmate's contract claim, Nessler's lead argument is that he signed the transaction documents only as an agent for VoiceBite and therefore cannot be liable on them. (Opp. at 11–14.) The Merger Agreement Nessler placed in the record refutes that premise. Nessler is a party to it in his own right: the Merger Agreement was made "by and among" Checkmate, VoiceBite, and five stockholders, including "Robert Nessler." (Dkt. 38-5 at 2.) Each Stockholder made his own representations "to Purchaser [i.e., Checkmate]," including that the

[3] The Court need not decide whether California or Delaware law applies to Checkmate's counterclaims because plaintiff has not identified any meaningful differences in the law of the two states.

Agreement "constitutes the legal, valid and binding obligations of such Stockholder, enforceable against such Stockholder in accordance with [its] terms" (*Id.* at 13 (§§ 4, 4.2).).

Nessler additionally agreed in the Merger Agreement, in his personal capacity as a Stockholder, that "no statement concerning such Stockholder [i.e., Nessler] contained in . . . any certificate furnished or to be furnished by such Stockholder [i.e., Nessler] to Purchaser [i.e., Checkmate] and Merger Sub in connection with the Transactions contains any untrue statement of material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading." (*Id.* at 15 (§ 4.9). Nessler also signed an Intellectual Property Acknowledgement dated April 30, 2024, in connection with the Merger Agreement and in his personal capacity in which he acknowledged Section 5.9(f) of the Merger Agreement concerning VoiceBite's "intellectual property" as defined in the Merger Agreement. (Countercl., ¶22.)

Nessler therefore breached his obligations as a Shareholder party to the Merger Agreement by, at the very least, purporting to "acknowledge" the Merger Agreement's representations about VoiceBite's intellectual property while knowing that VoiceBite was using technology created by CyborgOps and previously acquired by Presto Automation. (Countercl., ¶¶17, 25-27). Such acknowledgment, at the very least, "omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading" under Section 4.9 of the Merger Agreement, namely, that Nessler knew of VoiceBite's use of code authored by Cyborg Ops or, as Nessler describes the matter in his operative complaint, "legacy code issues." (Dkt. 11, ¶49.)

### C. The implied covenant claim is not futile.

Nessler argues that Checkmate's implied covenant claim is futile to the extent that its contract claim is futile, stating that it "invokes the same three agreements, the same representations, and the same damages as the first [claim for breach of contract]." (Opp. at 14.). Nessler is wrong on the implied covenant claim for the same reasons he is wrong on the contract claim.

### D. Checkmate pleads fraud with particularity, including the who, what, when, where, and how of Nessler's fraud.

Nessler argues that Checkmate fails to plead falsity, knowledge, or a misrepresentation made to Checkmate. Such arguments are meritless.[4]

***Who.*** Robert Nessler signed the Merger Agreement in his own name as a stockholder, as VoiceBite's CEO, and as the stockholders' representative. He signed the Intellectual Property Acknowledgement in his personal capacity, and the Assignment of IP and Other Assets as VoiceBite's CEO. (Countercl. ¶¶ 14, 19–22.) Nessler attempts to avoid the consequences of his actions by arguing, in effect, that he cannot be personally liable for fraud he committed in his capacity as VoiceBite CEO. (Opp. at 17). This argument is wrong on the law. *See Bock v. Hansen*, 225 Cal. App. 4th 215, 230 (2014) ("An agent or employee is always liable for his or her own torts, whether the principal is liable or not, and in spite of the fact

[4] A fraud claim requires (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Under Rule 9(b), "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted). The proposed counterclaims meet that standard.

that the agent acts in accordance with the principal's directions."); *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60 (Del. Ch. 2015) ("A corporate officer or agent who commits fraud is personally liable to a person injured by the fraud."). It is also wrong on the facts because the Merger Agreement defines VoiceBite's "knowledge" as "the actual knowledge of Robert Nessler, Arjun Vasan and Christopher Lam, upon reasonable inquiry." (Dkt. 38-5 at 6.)

***What, when, where.*** Checkmate identifies specific statements made in specific documents, all signed on or about April 30, 2024, by Nessler, that it contends to be fraudulent. (Countercl. ¶46). All such statements concern the authorship of the VoiceBite intellectual property by one of Nessler's co-founders, VoiceBite's ownership of or right to use intellectual property or software, the non-disclosure of VoiceBite source code to non-employees of VoiceBite, the absence of undisclosed information material to Checkmate, and/or non-infringement by VoiceBite on the rights of third parties. (*Id.*) All such statements were made to Checkmate. And though Nessler argues that the Assignment of IP and Other Assets was made between a VoiceBite co-founder and VoiceBite, Checkmate alleges that the assignment was exchanged in connection with the Merger Agreement. (*Id.* ¶20.) It was therefore intended to be received by Checkmate.

***How***. Contrary to Nessler's arguments, Checkmate also explains how the relevant statements were false, namely, that the (i) VoiceBite code was originally developed by CyborgOps, a company founded prior to VoiceBite and acquired by non-party Presto Automation, or Vasan Varadarajan who was previously the President of CyborgOps—rather than VoiceBite or Nessler's VoiceBite co-founder who purportedly assigned intellectual property rights to VoiceBite, (Countercl. ¶¶25-31); (ii) Nessler "knew VoiceBite's technology was not in fact authored and created by VoiceBite" but decided not to reveal those facts to Checkmate during the

merger transaction, (Countercl. ¶17);[5, 6] and (iii) Nessler did so despite representing to Checkmate that no statement concerning him contained "any untrue statement of material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading," (Countercl. ¶17), and that VoiceBite was "not aware of any information necessary to enable a prospective purchaser" of VoiceBite to "make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed," (Countercl. ¶19).

***Duty to disclose.*** Nessler briefly argues against any concealment-based theory of fraud on the grounds he had no duty to disclose. (Opp. at 17-18.) Nessler is wrong. A duty to disclose may arise "when the defendant actively conceals a material fact from the plaintiff," or and "when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal. Rptr. 2d 539 (1997); *see also Matter of Enstar Corp.*, 593 A.2d 543, 550 (Del. Ch. 1991), *rev'd on other grounds by Matter of ENSTAR Corp.*, 604 A.2d 404 (Del. 1992) ("The duty to speak arises from a contractual or fiduciary relationship or when disclosures are necessary to prevent statements actually made

---

[5] Nessler argues that one his representations was qualified as "the best of Assignor's knowledge." (Opp. at 17). This argument is meritless because Checkmate alleges Nessler had actual knowledge of the falsity of his statements but made the affirmative decision not to inform Checkmate. (Countercl. ¶17)

[6] Notably, Nessler essentially admits that he failed to disclose what he describes as "legacy code" in his operative complaint despite discussing the issue with his VoiceBite co-founders sometime prior to April 6, 2024, a few weeks before the Merger Agreement was entered. (Dkt. 11 ¶¶46, 48.) If nothing else, Checkmate's claims are not futile because Checkmate could amend its claims to include Nessler's admission that he considered whether to disclose "legacy code" issues prior to the Merger agreement and decided not to do so.

from being misleading.”). As discussed above, Checkmate has adequately pleaded that Nessler actively concealed the true origins of VoiceBite’s code.

**E. Checkmate adequately pleaded negligent misrepresentation.**

Nessler’s arguments against Checkmate’s negligent misrepresentation claim are meritless for at least three reasons.

***First.*** Nessler argues that Checkmate fails to plead negligent misrepresentation because the factual grounds for the negligent misrepresentation claim overlap with the grounds for the fraud claim. This is not a basis to dismiss the negligent misrepresentation claim because negligent misrepresentation is “essentially a lesser-included offense of fraud.” *VGS, Inc. v. Castiel*, No. C.A. 17995, 2003 WL 723285, at *9 (Del. Ch. Feb. 28, 2003); *see also Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407, 834 P.2d 745 (1992), *as modified* (Nov. 12, 1992) (“Negligent misrepresentation is . . . a species of the tort of deceit.”).

***Second.*** Nessler’s claim that fraud and negligent misrepresentation theories overlap also undo its argument that negligent misrepresentation is not “grounded in Fraud” as contemplated by the exclusion to Section 8.8, as further discussed below. *See infra* Section V.F.

***Third.*** Nessler’s reliance on the economic loss doctrine under California law is misplaced because that doctrine “does not bar fraud claims based on affirmative misrepresentations which expose a plaintiff to personal damages independent of economic loss,” and courts in this district have permitted negligent misrepresentation claims that factually coincide with such fraud claims. *Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*, 753 F. Supp. 3d 966, 978, 981-982 (C.D. Cal. 2024). These rules permit Checkmate to assert negligent misrepresentation claims because, as Nessler concedes, the claims factually overlap.

And Checkmate alleges that Nessler's false representations exposed Checkmate to potential third-party claims due to the earlier acquisition of CyborgOps by Presto Automation. *See id.*; *see also Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 4 (2004) ("In addition, Dana's provision of faulty clutches exposed Robinson to liability for personal damages if a helicopter crashed and to disciplinary action by the FAA. Thus, Dana's fraud is a tort independent of the breach. We hold the economic loss rule does not bar Robinson's fraud and intentional misrepresentation claims because they were independent of Dana's breach of contract.").

**F. Section 8.8 of the Merger Agreement does not prevent Checkmate from pursuing claims "grounded in Fraud," including those asserted in the proposed counterclaims.**

Nessler argues that Section 8.8 of the Merger Agreement makes indemnification the "sole and exclusive remedy" for non-fraud claims (Opp. at 14–16). This argument lacks merit.

***First***. Section 8.8 does not apply to "actions grounded in Fraud." (Dkt. 38-5 at 34, §8.8) Accordingly, Nessler does not dispute that Section 8.8 has no application to Checkmate's fraud claim. He instead argues that it bars Checkmate's claims for breach of contract and negligent misrepresentation. But Nessler reads Section 8.8 too narrowly. As conceded by Nessler, the Merger Agreement defines "Fraud" as "common law fraud under the laws of the State of Delaware." (*Id.*at 5, § 1.1.). Yet Section 8.8's fraud-based carve out is not limited to "Fraud," but instead extends to the broader concept of "actions grounded in Fraud" that can cover tort or contract theories that are factually premised on fraud. *See Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 762 (Del. Ch. 2014) ("[N]egligent misrepresentation is essentially a species of common law fraud . . . ."); *Vera v. REL-BC, LLC*, 66 Cal.

App. 5th 57, 66 (2021) (interpreting statutory term "ground of fraud or mistake" to include contract claim factually grounded in fraud); *United States v. Unified Indus., Inc.*, 929 F. Supp. 947, 950 (E.D. Va. 1996) ("The more plausible plain reading of the phrase 'involving fraud' is that it contemplates a wider range of claims than those that actually allege a cause of action for fraud.").

Moreover, given the specific language of Section 8.8's exclusion of "actions grounded in Fraud," rather than "Fraud" as defined in the Merger Agreement, Nessler is mistaken in relying on *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006). This is because the exclusive remedy provision in *Abry Partners* is far broader than the one at issue in this case. The provision in *Abry Partners* dictated that an indemnity action was the "sole remedy both 'with respect to' the Stock Purchase Agreement and 'the Sale contemplated hereby'"—without any exclusions whatsoever. *Id.* at 1053. The court therefore found that the provision applied to both negligence- and fraud-based claims, but that public policy prevented enforcement of the provision as to fraud claims. *Id.*, 1053-65. This case is different because Section 8.8 excluded "actions grounded in Fraud."

***Second.*** Even if Checkmate's non-fraud claims were subject to Section 8.8 (they are not), Checkmate could plead compliance with that provision. By Nessler's own account, Checkmate served him, as Holder Representative, with a Notice of Claim in January 2025, which he disputed on behalf of the VoiceBite stockholders. (Dkt. 11 ¶¶ 98, 100.) That notice came nine months after closing, within the 18-month survival period Nessler invokes (Opp. at 15). And Section 5.9, the intellectual-property representation, is a "Holder Fundamental Representation" that survives until the applicable statute of limitations expires. (Dkt. 38-5 at 33 (§§ 8.4, 8.5(a)).) So, to the extent the Court concludes that any of Checkmate's counterclaims

should expressly invoke Section 8 of the merger agreement, the appropriate course is to permit Checkmate to plead it that way, not to deny leave.

**G. Checkmate has adequately pleaded damages.**

Checkmate identified certain damages in its proposed counterclaims, including exposure to potential third-party claims regarding its possession or use of technology created by Cyborg Ops and sold to Presto Automation, as well as Checkmate stock granted to Nessler as consideration in the Merger Agreement. *See* Proposed Counterclaims, ¶52. Nessler briefly argues that Checkmate failed to plead damages, claiming that "[p]aying agreed consideration is not an injury" and that "[e]xposure to claims no one has asserted is not an injury" without citation to any authority. (Opp. at 19.) Nessler is wrong. Exposure to potential claims, even if not actually asserted, constitutes damages giving rise to tort liability. *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 (2004) (permitting tort claim despite economic loss doctrine based on exposure to third-party claims). And payment of consideration constitutes an injury where, as here, the consideration was obtained by fraud and the victim would not otherwise have paid the consideration. *See Cobalt Operating, LLC v. James Crystal Enters., LLC*, No. CIV.A. 714-VCS, 2007 WL 2142926, at *4 (Del. Ch. July 20, 2007), *aff'd,* 945 A.2d 594 (Del. 2008) (fraud case awarding damages equivalent to the difference between actual value of acquired business and fraudulently inflated value of that business); *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1165, 23 Cal. Rptr. 3d 335, 354 (2005) ("As Nokes correctly points out, fraud damages are computed under the out-of-pocket loss rule stated in Civil Code section 3343. Under the rule, Persson was entitled to recover the difference, if any, between the actual value of the interest with which he parted (his shares in the corporation) and the actual value he received ($1.4 million dollars).").

## VI. Nessler's procedural objections do not warrant denial of leave to amend.

Nessler makes several procedural objections, none of which warrant leave to amend.

***Effect of proposed amendment.*** Nessler contends that Checkmate's motion for leave does not satisfy the Court's Civil Standing Order, which requires a motion to amend to "(1) state the effect of the amendment; (2) be serially numbered to differentiate the amendment from previous amendments; and (3) identify the pages, line numbers, and wording of any proposed change or addition of material." (Opp. at 21.) The motion stated the effect of the amendment: to assert Checkmate's counterclaims arising from the VoiceBite transaction. (Dkt. 44 at 6–7, 10.) The proposed pleading is serially numbered as the Second Amended Answer and Counterclaims. And Checkmate filed both a clean version proposed counterclaims and a redline comparison of its proposed counterclaims to its prior counterclaims. (Dkt. 44-1, 44-2.) In sum, the proposed pleading adds the Merger Agreement to the First Claim for Relief and identifies the parties to that agreement and the capacities in which Nessler signed it. (Countercl. ¶¶ 13–14, 32–40.) It also specifies circumstances of the challenged representations, including by document and by the capacity in which Nessler signed the document. (*Id.* ¶¶ 19–22, 46, 55.) And it identifies specific categories of damages, including the Checkmate stock issued to Nessler and Checkmate's exposure to third-party claims. (*Id.* ¶¶ 15, 40, 44, 52, 60.) The effect of these changes is to respond to issues that Nessler raised in his prior motion to dismiss Checkmate's counterclaims and supporting reply. (*See* Dkt. 33; Dkt. 38 at 10, 16.).

***Form of the proposed pleading.*** Nessler asks that, if the Court grants leave, it requires Checkmate to file a conforming pleading within fourteen days rather than

deem Exhibit A filed. (Opp. at 21.) To the extent the Court deem any limitations on Checkmate's proposed counterclaims appropriate, Checkmate will file an amended pleading consistent with the Court's limitations.[7]

## CONCLUSION

For these reasons, Checkmate respectfully requests that the Court grant it leave to file its Second Amended Answer and Counterclaims.

DATED: November 3, 2026

BARRIENTOS PC

*/s/ J. Alejandro Barrientos*

J. Alejandro Barrientos
Attorney for Defendant-Counter Claimant
Checkmate.com, Inc.

[7] In so doing, Checkmate will not waive arguments made in its initial motion for leave or in this reply.

**DECLARATION OF COUNSEL**

I, J. Alejandro Barrientos, declare as follows:

1. I am counsel of record for Checkmate.com, Inc. ("Checkmate") in the above-captioned case.

2. On or about July 29, 2026, Checkmate served interrogatories on Robert Nessler, including one instructing Nessler to "IDENTIFY all legacy code issues that YOU contend should have been disclosed in connection with the CHECKMATE/VOICEBITE TRANSACTION."

3. On or about July 29, 2026, Checkmate also served requests for production on Robert Nessler, including, a request for "All DOCUMENTS concerning legacy code issues in the VoiceBite AI solution, including any disclosures or non-disclosures relating to such issues."

4. Nessler has already produced approximately 1,400 documents in response to Checkmate's first sets of discovery requests.

5. Nessler served discovery requests on Checkmate on or about October 30, 2026, including requests related to "the trade secret and intellectual property acknowledgements dated on or about April 22, 2024 that CHECKMATE required PLAINTIFF, Arjun Vasan, and Christopher Lam to sign before closing."

I swear under penalty of perjury the foregoing is true and correct to the best of my knowledge.

Dated: November 3, 2026

*/s/J. Alejandro Barrientos*

J. Alejandro Barrientos

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for defendant Checkmate.com, Inc., certifies that this brief contains approximately 4,880 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 3, 2026

*/s/J. Alejandro Barrientos*

J. Alejandro Barrientos